**Chester KOWALCZYK, Petitioner,**

**v.**

**UNITED STATES, Respondent.**

**No. 94 CV 5620 (ADS).**

United States District Court,
E.D. New York.

Aug. 21, 1996.

Chester Kowalczyk, Fort Dix, New Jersey, Petitioner, pro se.

Zachary W. Carter, United States Attorney by Peter Tomao, Assistant United States Attorney, Garden City, New York, for the U.S.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge:

Presently before the Court is the motion of the petitioner, pro se Chester Kowalczyk ("Kowalczyk" or the "petitioner"), for a writ of habeas corpus with this Court pursu-

1132

ant to 28 U.S.C. § 2255.[1] He bases his claim on the following: (1) ineffective assistance of counsel; (2) erroneous jury instructions; (3) denial of due process; (4) abuse of discretion in evidentiary rulings; (5) unconstitutionality of the underlying criminal statute pursuant to which he was convicted; and (6) the Government's failure to disclose *Brady* material.

On January 22, 1990, the petitioner, who was tried under an eight count indictment, was convicted by a jury of six counts of altering vehicle identification numbers ("VINs") in violation of 18 U.S.C. § 511, one count of tax evasion in violation of 26 U.S.C. § 7201 and one count of making a false statement in a tax return in violation of 26 U.S.C. § 7206(1). The tax fraud conviction was later dismissed as a lesser included offense of the tax evasion conviction. The petitioner was subsequently sentenced to six concurrent five year terms of imprisonment on the six counts of altering VINs and a $20,000 fine. On appeal, to the Second Circuit, Kowalczyk argued that: (1) there was insufficient evidence to convict him; (2) the district court's charge with respect to the VIN alteration counts was erroneous; (3) the district court erred in refusing to instruct the jury that the defendant's good faith belief that he had filed a correct tax return negated the necessary element of wilfulness inherent in the conviction; and (4) there was insufficient evidence of proper venue. The conviction was affirmed on appeal by writ of mandate dated May 15, 1991. *United States v. Kowalczyk*, 90–1678, 935 F.2d 1277 (June 26, 1991). A subsequent motion to reduce the sentence was filed on January 27, 1992 pursuant to Fed.R.Crim.P. 35(b). The motion

was denied by order dated November 24, 1992 and affirmed on March 15, 1994.

In addition to filing his original moving papers seeking habeas relief, Kowalczyk has also filed motions for summary judgment in his favor and for bail pending adjudication of the habeas petition, as well as a motion for contempt against the former New York City Police Commissioner William Bratton for failure to comply with a subpoena and produce certain discoverable material.

## I. *Background*

The crux of the Government's case was that Kowalczyk was involved in a scheme in which he would obliterate or alter VINs in violation of federal law. All vehicles have their own unique VINs, a seventeen digit number attached and stamped on the vehicle in several places by the auto manufacturer. At the factory, a public VIN plate is affixed on the dashboard on the driver's side and a "confidential" VIN is stamped on the underside or engine.

As part of his criminal enterprise, Kowalczyk would purchase badly damaged vehicles ("Salvage Vehicles") at a low cost from Tech–Cor, Inc. ("Tech Cor"), a New Jersey salvage business. Tech–Cor is an insurance company salvage yard that auctions vehicles which have been damaged by fire, theft or collision and whose owners have been paid on a total loss basis. After paying the total loss to the insured car-owner, the insurance company obtained title to the vehicles, which are then auctioned off at Tech–Cor in a substantially damaged condition. The defendant would

1. On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132 (1996) which modifies the relevant statutes. This petition for a writ of habeas corpus was filed on December 7, 1994. The 1996 amendments do not specify whether the amendments are retroactive. However, in *Ayala v. Speckard*, 89 F.3d 91, 96–97 (2d Cir.1996), the Second Circuit assumed, without deciding, that the 1996 amendments are retroactive in petitions brought pursuant to 28 U.S.C. § 2254 in non capital cases. Two days later, a different appellate penal, in *Boria v. Keane*, 90 F.3d 36 (2d Cir.1996) on a petition for rehearing by the State, held that the Act provides no indication that Congress intended that it apply to pending non-capital cases, and coupled with the pre-

sumption against retroactivity, held that it should not be so applied. *Id.* at 37–38; *see also Reyes v. Keane*, 90 F.3d 676 (2d Cir.1996) (declining to apply amendments retroactively); *Williams v. Calderon*, 83 F.3d 281 (9th Cir.1996) (holding that non-death penalty case amendments are not retroactive); *Delarosa v. Portuondo*, 1996 WL 363106 (S.D.N.Y. July 1, 1996); *Grady v. Artuz*, 931 F.Supp. 1048 (S.D.N.Y.1996). Applying the same reasoning, the Court finds that the 1996 amendments do not apply retroactively to habeas petitions brought pursuant to 18 U.S.C. § 2255, and as a result, will not be considered. *See United States v. Trevino*, 1996 WL 252570 at *3 n. 1 (N.D.Ill. May 10, 1996) (reaching the same conclusion).

then obtain a vehicle in good condition similar to the Salvage Vehicle with respect to make, model and year (the "Similar Vehicle").

After the defendant purchased a Salvage Vehicle, the public VIN plate was removed and then transferred to the Similar Vehicle. The Similar Vehicle's confidential VIN then would be obliterated or altered. There are at least three separate steps in the VIN alteration process: (1) removal of the public VIN from the Salvage Vehicle; (2) affixation of the public VIN to the Similar Vehicle; and (3) obliteration of the confidential VIN on the Similar Vehicle. According to the evidence at trial, after the alterations described above were performed, the defendant sold the Similar Vehicle at a higher price than the cost of the salvaged vehicle.

Detective Thomas Knobel testified that he, among others, inspected the confidential and public VINs of approximately twenty Similar Vehicles, including the vehicles referred to in Counts one through six of the indictment. Tr. 176–77, 178. As part of the examination, Detective Knobel examined the "rail" or underside of the vehicle and the engines where the confidential VINs are stamped. Tr. 178. In each case, Detective Knobel personally observed that the original confidential VIN had been "ground down," "hammered off," "obliterated" or "restamped." Tr. 183, 185, 189, 194–95, 197–99, 209. In three cases, through chemical restoration or other means, Knobel was able to ascertain the true confidential VIN of the Similar Vehicle. Tr. 189–91, 195–96, 198. Significantly, in these three cases the true confidential VINs differed from the public VINs, and in one case, the evidence demonstrated that the vehicle bearing the true confidential VIN had been reported missing or stolen. Tr. 665–69. The proof showed that this scam enabled the petitioner to sell these procured Similar Vehicles containing the title history and paperwork of the Salvage Vehicles.

The evidence further established that in 1985 Kowalczyk purchased approximately forty-five cars from Tech–Cor at a total cost of $58,055. He was able to resell approximately twenty-five cars that year for the sum of $220,900 making a profit of $152,283, which was not disclosed on his tax returns.

## II. *Discussion*

As stated above, Kowalczyk makes the following arguments in support of his petition for a writ of habeas corpus: (1) ineffective assistance of counsel; (2) erroneous jury instructions; (3) denial of due process; (4) abuse of discretion in evidentiary rulings; (5) unconstitutionality of the underlying criminal statute pursuant to which he was convicted; and (6) the Government failed to disclose *Brady* material.

■ As recently stated by the Second Circuit, "because requests for habeas corpus relief are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Ciak v. United States,* 59 F.3d 296, 301 (2d Cir.1995), citing, *United States v. Frady,* 456 U.S. 152, 165, 102 S.Ct. 1584, 1593, 71 L.Ed.2d 816 (1982). As a result, prisoners seeking habeas corpus relief pursuant to section 2255 must show both a violation of their constitutional rights and "substantial prejudice" or a "fundamental miscarriage of justice." *Ciak,* 59 F.3d at 301.

Further, in section 2255 proceedings, the Supreme Court has recognized the rule of "procedural default: [that prisoners] cannot assert claims they failed to raise at trial or on direct appeal unless they can show 'cause' for the default and 'prejudice' resulting from it." *Id.* at 302, citing, *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977); *see also Reed v. Farley,* 512 U.S. 339, ——, 114 S.Ct. 2291, 2300, 129 L.Ed.2d 277 (1994) ("the general rule is that the writ of habeas corpus will not be allowed to do service for an appeal.... Where the petitioner—whether a state or federal prisoner—failed properly to raise his claim on direct review, the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice from the alleged ... violations' ").

■ However, the traditional procedural default rule generally will not apply to ineffective assistance of counsel claims where a petitioner was represented by the same attorney at trial and on direct appeal or where such claims depend on matters outside the scope of the record on direct appeal. *Billy–Eko v. United States*, 8 F.3d 111, 114 (2d Cir.1993). This rule is based on two policy considerations. First, in many instances, the accused is represented by the same counsel during trial and on appeal. As such, it would be unrealistic to expect counsel on appeal to vigorously pursue an ineffective assistance of counsel claim. *Id.* at 114. Second, the resolution of ineffective assistance of counsel claims often requires evidence outside the record on appeal because such claims are often based on alleged errors of omission which are difficult to perceive from the record. *Id.* Examples of such errors include the failure to call a witness, introduce certain evidence or a conflict of interest. *Id.*

■ The exception to the general "cause" and "prejudice" rule as set forth in *Billy–Eko* also contains an exception. Specifically, in the narrow circumstances where: (1) the petitioner was represented by new counsel on the direct appeal; and (2) the claim is based solely on the record on appeal, the exception to the general procedural bar rule will not apply. *Id.* at 114–15, citing, *United States v. Phillips*, 914 F.2d 835, 846 (7th Cir.1990).

### A. *Ineffective assistance of counsel*

Kowalczyk's petition states two alternative theories alleging the ineffective assistance of counsel. Initially, he argues that his trial attorney, Felix T. Gilroy ("Gilroy") suffered from a conflict of interest based on reasons set forth below. Alternatively, the petitioner contends that he was prejudiced by the ineffective assistance of counsel as a result of Gilroy's failure to raise certain issues either at trial or on appeal.

■ In general, to state a valid claim for ineffective assistance of counsel, the petitioner must establish that "counsel's representation fell below an objective standard of reasonableness," and that the defendant was prejudiced as a result of such conduct.

*Strickland v. Washington*, 466 U.S. 668, 688, 692, 104 S.Ct. 2052, 2064, 2067, 80 L.Ed.2d 674 (1984); *United States v. Hansel*, 70 F.3d 6, 8 (2d Cir.1995). With respect to the conduct of counsel, the petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065; *Hansel*, 70 F.3d at 8. As to prejudice, the petitioner must establish that but for the counsel's "unprofessional errors," the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; *Hansel*, 70 F.3d at 8.

### 1. *Conflict of interest*

Kowalczyk's first ineffective assistance of counsel argument is based on his trial counsel's alleged conflict of interest. According to the petitioner, Gilroy is a former law partner of Louis E. Diamond ("Diamond"). Diamond was also Kowalczyk's former business partner in an auto repair business under investigation for criminal activity. Further, Diamond's associate, Louis E. Rosenthal, Esq. ("Rosenthal") who represented Diamond in his divorce settlement, maintained an adversarial relationship with Gilroy who represented Diamond's wife in those divorce proceedings.

According to the petitioner, he met Diamond in 1983 at an auto show, as the result of which the two became friends and Diamond employed Kowalczyk to restore automobiles on numerous occasions. In return for his services, Diamond allegedly agreed to provide the petitioner with unlimited legal services. This relationship continued, with Diamond acting as "silent partner" supplying money to purchase old automobiles for restoration, repair and resale. In addition, Diamond would supply necessary auto parts which he would obtain from another client, Edward Janis, the proprietor of an auto repair shop, Wood Auto Body. On several occasions Diamond recommended that Kowalczyk utilize Janis' repair services. According to Kowalczyk, Janis was placed under government investigation in 1987 for unidentified "auto crimes." Although Diamond was

representing Janis in the investigation, Janis never went to trial as he took his own life.

When Kowalczyk came under investigation in 1987, Diamond recommended the legal services of Rosenthal, whom Diamond had used in his prior divorce proceedings. Kowalczyk then retained Rosenthal and paid the sum of $10,000. In 1988, contrary to Rosenthal's opinion, Kowalczyk was indicted with the crimes for which he was eventually convicted. Although the subsequent events are not entirely clear, apparently dissatisfied with Rosenthal's representation, Kowalczyk hired Diamond's former partner Felix Gilroy to represent him, and upon Gilroy's advice, decided to take the case to trial. According to the petitioner, Gilroy's "veiled interest" in his representation are best demonstrated by the following events:

1. Diamond had telephoned Gilroy's secretary and told her that if the Diamond–Kowalczyk business relationship was disclosed or Gilroy attempted to obtain any of the retainer paid to Rosenthal, Diamond would inform Gilroy's wife that he was having an affair. Gilroy's secretary later relayed the conversation to Kowalczyk's wife.

2. At trial, Gilroy did not permit Kowalczyk "to testify to enter his business records into evidence," although the jury was permitted to view them during the trial testimony of the petitioner's wife.

Further, on appeal, according to the petitioner, Gilroy failed to present issues regarding erroneous jury instructions, his right to testify, the exclusion of the business records, an alleged defect in the indictment, and a constitutional challenge to 18 U.S.C. § 511, the merits of which are presented in this petition for relief.

■ The Supreme Court has recognized that the Sixth Amendment right to counsel includes "a correlative right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271, 101 S.Ct. 1097, 1103, 67 L.Ed.2d 220 (1981), citing, *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55

L.Ed.2d 426 (1978). As the Second Circuit has reiterated in a number of opinions, a "defendant has suffered ineffective assistance of counsel in violation of the Sixth Amendment if his attorney has (1) a potential conflict of interest that resulted in prejudice to the defendant, or (2) an actual conflict of interest that adversely affected the attorney's performance." *United States v. Levy*, 25 F.3d 146, 152 (2d Cir.1994); *see also Ciak*, 59 F.3d at 301–03 (applying *Levy* to section 2255 petition). In order to "make out a Sixth Amendment violation based on an attorney conflict of interest, petitioner must demonstrate that a 'plausible alternative defense strategy ... might have been pursued' and that such strategy was 'inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.'" *Ciak*, 59 F.3d at 307, quoting, *Winkler v. Keane*, 7 F.3d 304, 309 (2d Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1407, 128 L.Ed.2d 79 (1994).

■ Further, where the district court is sufficiently apprised of a conflict of interest, the court has an obligation to further investigate the issue. *Levy*, 25 F.3d at 153; *see also Ciak*, 59 F.3d at 301–02. If the inquiry discloses either an actual or potential conflict, the court must either: (1) disqualify the attorney where "no rational defendant would knowingly and intelligently desire the conflicted lawyer's representation;" or (2) where there is a lesser or potential conflict the court should obtain a knowing and valid waiver of the right to have a "non-conflicted lawyer." *Levy*, 25 F.3d at 153. Ignoring a possible conflict of interest will result in an automatic reversal. *Ciak*, 59 F.3d at 301, citing, *Levy*, 25 F.3d at 153.

■ Addressing the latter test first, the Court finds that the petitioner has failed to establish an actual conflict of interest adversely affecting counsel's performance. The Second Circuit has generally limited an actual conflict of interest situation to one where the attorney is either unlicensed, *Solina v. United States*, 709 F.2d 160, 167 (2d Cir. 1983), or has been involved in the wrongful conduct related to the crime with which his client is charged. *United States v. Aiello*, 900 F.2d 528, 531 (2d Cir.1990) (refusing to extend the per se actual conflict rule beyond

situations in which defendant was represented by as person unauthorized to practice law or where the attorney might be implicated in the defendant's wrongdoing); *United States v. Jones*, 900 F.2d 512, 519 (2d Cir.), *cert. denied*, 498 U.S. 846, 111 S.Ct. 131, 112 L.Ed.2d 99 (1990); *see also Bellamy v. Cogdell*, 974 F.2d 302, 307–08 (2d Cir.1992) (en banc), *cert. denied*, 507 U.S. 960, 113 S.Ct. 1383, 122 L.Ed.2d 759 (1993) (rules regarding per se violations of Sixth Amendment right to counsel are to be "narrowly applied"); *United States v. Cancilla*, 725 F.2d 867, 870 (2d Cir.1984) (finding a conflict of interest where the attorney might be implicated in the defendant's unlawful activity). The rationale underlying this rule is that fear of prompting a government investigation of the attorney's own conduct would prevent the attorney from mounting a vigorous defense. *Id.*

Applying this standard the Court finds that Gilroy did not harbor actual conflicting interests. The conflict of interest alleged by the petitioner is based on an alleged telephone call made by Diamond to Gilroy's secretary and Gilroy's decision to advise Kowalczyk not to testify. However, as the Government notes, the petitioner does not contend that Gilroy was either informed of the threat by his secretary or that he reacted to it in any way. Rather, Kowalczyk asserts in conclusory fashion that "[t]o deduce otherwise is convoluting the facts as presented." Further, the only support for this proposition is an affidavit executed by Kowalczyk's wife in 1994, attesting to a conversation with Gilroy's secretary two years earlier, in 1992, which recounted a conversation from 1989. As a result, the Court finds that these incomplete accusations of questionable credibility are insufficient to establish an actual conflict of interest. *See United States v. Aiello*, 814 F.2d 109, 113–14 (2d Cir.1987) (a hearing pursuant to a § 2255 petition is unwarranted where such a request is based on "airy generalities, conclusory assertions and hearsay [which] would [not] be admissible ... at a hearing").

In reaching this conclusion, the Court notes that if Kowalczyk's trial counsel had been Diamond, with whom he shared a business interest, the issue would have been much closer. However, neither Diamond nor Rosenthal were involved in the trial aspect of this litigation. Accordingly, any conflict of interest which involved those persons is irrelevant.

■ With respect to the second test, the petitioner must establish a potential conflict which resulted in his being prejudiced. *See Strickland*, 466 U.S. at 688, 694, 104 S.Ct. at 2064, 2068. Assuming a potential conflict of interest exists by virtue of Diamond's threats to advise Gilroy's wife of Gilroy's alleged extra marital affair, Kowalczyk argues that he was prejudiced because his counsel precluded him from testifying in his own behalf. While the Court recognizes, that at least one Court in this district has recently found somewhat similar events sufficient to support a § 2255 petition, *see Campos v. United States*, 930 F.Supp. 787 (E.D.N.Y.1996), for the reasons set forth below, the Court finds that in this case the petitioner has not demonstrated any prejudice by his failure to take the stand.

In his motion papers, Kowalczyk contends only that given the opportunity, he would have testified in order to introduce invoices from Wood Auto Body. As stated above, according to the petitioner Wood Auto Body was a repair shop that he had hired on multiple occasions at the recommendation of Diamond, his then business partner. Kowalczyk contends that Wood Auto Body's proprietor, Edward Janis had come under investigation for altering VIN's. The petitioner reasons that Diamond's recommendation of Janis' services "begs-the-question of collusion."

However, a closer analysis reveals that even if the Court assumes that Gilroy's recommendation that Kowalczyk not testify was anything but a strategic decision not to expose his client to cross examination, an unlikely conclusion, the Court nevertheless finds that the petitioner has failed to allege any prejudice. According to Kowalczyk the purpose of his testimony would be to place the Wood Auto Body invoices into evidence. However, the petitioner does not demonstrate that if he had testified, the Court would have found those records admissible,

and even if it did whether the outcome of the trial would have been different.

At trial, the petitioner attempted to introduce the Wood Auto Records into evidence through the testimony of his wife and secretary, Linda Kowalczyk and his expert accountant witness Morris Liebman, who used the records to make his own calculations. *See* Tr. 845–48, 853. The Court however, sustained the Government's objection pursuant to Fed.R.Evid. 803(6) because Mrs. Kowalczyk was unable to authenticate the records. The petitioner offers no basis for the Court to conclude that he would have been successful where his wife had failed.

▮▮▮▮▮ In order for business records to be admissible as exceptions to the hearsay rule pursuant to Fed.R.Evid. 803(6), the documents at issue must be prepared,

> at or near the time, by or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, ... all as shown by the testimony of the custodian or otherwise qualified witness, unless the source of information of the method or circumstances of preparation indicate a lack of trustworthiness.

*Id.* Although the Second Circuit has adopted a "generous view" of the business records exception, and the "principal precondition" of admissibility is the "trustworthiness" of the record, the proffered evidence "must meet all of the requirements of the exception" to be accepted into evidence. *United States v. Strother*, 49 F.3d 869, 874 (2d Cir.1995), citing, *United States v. Freidin*, 849 F.2d 716, 722 (2d Cir.1988); *Saks Int'l, Inc. v. M/V Export Champion*, 817 F.2d 1011, 1013 (2d Cir.1987). The determination as to whether a business record is sufficiently reliable to warrant admission into evidence is within the sound discretion of the trial court. *Strother*, 49 F.3d at 874, citing, *Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.*, 38 F.3d 627, 633 (2d Cir.1994).

In his moving papers, Kowalczyk makes no effort to satisfy any of the elements set forth in Rule 803(6). He does not allege any "knowledge" of Wood Auto Body's business activities or records. There are no facts to support the contention that Kowalczyk would be able to demonstrate that the records at issue were made at or near the time of the event recorded, that the records were made by a person with knowledge, that the records were kept in the regular course of business, or that Wood Auto Body regularly made and kept such records. Further, there has been no proof that Wood Auto Body records were regularly kept as part of the petitioner's business records. Accordingly, the Court finds that because the petitioner has not satisfactorily shown that he would have been able to introduce the Wood Auto Body records had he testified at the trial, he has not demonstrated any prejudice. As a result, Kowalczyk is unable to satisfy the second standard for a potential conflict of interest as he is unable to state a "plausible alternative defense strategy [which] ... might have been pursued" but was not " 'due to the attorney's other loyalties and interests.' " *Ciak*, 59 F.3d at 307, quoting, *Winkler*, 7 F.3d at 309.

In reaching this conclusion, the Court acknowledges two arguments made by Kowalczyk in his reply papers. First, the petitioner contends that Gilroy's denial of his right to testify affected more than his ability to have the Wood Auto Body records admitted into evidence. His failure to take the stand also "denied his entire right to testify in his own defense, whatever would have developed through the course of his testimony would be pertinent to the entire subject matter of the Indictment and Kowalczyk's right to present all evidence in support of his not guilty pleadings." However, the petitioner does not state what else he would have testified to. He does not explain what portion of the Government's case he would have controverted. Accordingly, Kowalczyk does not demonstrate how his failure to take the stand otherwise prejudiced the jury's verdict.

Second, the petitioner asserts that the Wood Auto Body records were wrongly excluded because his secretary-wife did properly authenticate them, and even if she did not, he would have. However, because the Court's decision to exclude the documents during Mrs. Kowalczyk's testimony is irrele-

vant as to the petitioner's ineffective assistance of counsel claim, the Court need only consider the latter contention. According to Kowalczyk, he was a "witness to the making of the receipts at Wood Auto Body when payment was made for the repairs and could have testified to such at trial." However, even if the petitioner's allegation is taken as true, the records would still be inadmissible as Kowalczyk would be unable to testify as to Wood Auto Body's regular business practices regarding the maintenance of business records. While the Second Circuit has recognized that the records of another entity may be admitted as a company's business record where those documents are incorporated into that company's record, *see United States v. Jakobetz,* 955 F.2d 786, 801 (2d Cir.1992) (addressing the regular and systematic incorporation of toll receipts into company's records), there is no indication that the records at issue are sufficiently trustworthy to permit the petitioner to authenticate them where he is unable to also testify regarding whether those documents are kept in the regular course of business.

Moreover, Kowalczyk does not allege how the outcome of the trial was prejudiced by the fact that the alleged business records were not admitted. Indeed, in the course of the petitioner's voluminous memoranda of law, he addresses the purpose of his testimony only once, stating that the Wood Auto Body records would have

> exculpated [him] for the VIN alteration charges and the costs of repairs would have negated the Government's tax on the profits attributed to [him] that were never gained by [him]. Similarly, Kowalczyk would have rebuked the testimony of Government witness Robert Salvatore and his claims of only making a $400 profit per vehicle that he sold from vehicles that had originated from Kowalczyk, which Salvatore had falsely claimed were "consignment cars" instead of the actual cars the [sic] Salvatore had "purchased from Kowalczyk."

This statement is insufficient to demonstrate how the petitioner was prejudiced by his failure to testify. First, Kowalczyk does not explain *how* the exclusion of the Wood Auto Body records somehow tainted the jury's verdict with respect to his convictions for infringing 18 U.S.C. § 511. With respect to the tax fraud he states only what he would have testified to had he been given the opportunity. He does not explain how the absence of this testimony undermined the jury verdict in light of the evidence already received by the Court.

■ Finally, before turning to Kowalczyk's other ineffective assistance of counsel claims, the Court considers the petitioner's argument that he is entitled to an automatic reversal based on the Court's failure to inquire into the alleged conflict of interest. As stated above, in *Levy* the Second Circuit set forth a bright line rule that "[w]hen a possible conflict has been entirely ignored, reversal is automatic." *Levy,* 25 F.3d at 153. This rule applies only where the trial court fails to fulfill its initial "inquiry" obligation. *Id.* at 154.

■ In his reply papers the petitioner argues that the Court was sufficiently apprised of the potential conflict of interest to warrant further inquiry which the Court failed to undertake. In support of this position, Kowalczyk cites to a single statement made by Gilroy that he did not "speak to Mr. Diamond for many reasons, from time to time [he, Gilroy] represent[s] his second wife [in divorce proceedings] and she in fact was asked to be a Government witness against him. She was interviewed in my office so I deliberately abstained from any contact with this man for that and other personal reasons." Tr. 765, 766. Based on this statement the petitioner contends that the Court was obligated to further inquire as to any potential conflict of interest between Gilroy and himself. The Court disagrees.

Gilroy's statement as to why he avoids contact with Diamond is self explanatory. Gilroy represents Diamond's wife, who was asked to testify against Diamond. Indeed if Gilroy had continued to have contact with Diamond given these circumstances, there might be a conflict interest in the case against Diamond. The fact that Gilroy references "other personal reasons" for not having contact with Diamond does not alter this

conclusion. As former law partners it is quite reasonable for the Court to assume that the two had an extensive relationship having nothing to do with this criminal case.

Further this statement was made at a sidebar during the cross examination of the IRS agent responsible for assessing the petitioner's tax returns. Gilroy was simply stating that he had never been contacted by the IRS regarding Kowalczyk's tax returns. The Government's attorney responded that the petitioner's prior counsel, Diamond had been contacted. Gilroy then commented that he did not speak with Diamond because, among other reasons, he represents his second wife occasionally. Given the context of this dialogue, and the limited nature of the comment that the petitioner relies upon, the Court finds that it was under no duty to further inquire as to Gilroy's alleged potential conflict of interest. Accordingly, the petitioner's request for relief pursuant to 28 U.S.C. § 2255 based on his attorney's alleged conflict of interest is denied.

### 2. *Ineffective assistance of counsel under Strickland*

In addition to his ineffective assistance of counsel claim based on his trial attorney's alleged conflict of interest, Kowalczyk further claims that his Sixth Amendment right to counsel was violated under the more general *Strickland* standard. As a preliminary matter, the Court recognizes that virtually all of the petitioners claims are brought on their merits and as a ground for an ineffective assistance of counsel claim, apparently to avoid dismissal under the "cause" and "prejudice" standard set forth above. However, rather than lump these claims together, because the motion papers are voluminous, the Court will consider them in the order they are presented in the moving papers in order to keep the record consistent.

As set forth above, under *Strickland*, the petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," and that the defendant was prejudiced as a result of such conduct. *Strickland v. Washington*, 466 U.S. at 688, 104 S.Ct. at 2064; *Hansel*, 70 F.3d at 8. Applying this standard, Kowalczyk contends that his Sixth Amendment rights were abridged on two grounds. First, his attorney failed to argue that the Government did not prove that the vehicle identification numbers at issue were those contemplated under 18 U.S.C. § 511. Second, Kowalczyk contends that Gilroy's refusal to permit him to testify on his own behalf violated the *Strickland* standard, even if it was not the result of a conflict of interest as discussed above.

■ With respect to the first argument, 18 U.S.C. § 511(c)(1) (1984), the statute charged in the indictment, defines the term "identification number" as a "number or symbol that is inscribed or affixed for purposes of identification under the National Traffic and Motor Vehicle Safety Act and Motor Vehicle and Safety Act of 1966, or the Motor Vehicle Information and Cost Saving Act." At trial, the Court instructed the jury that the identification number was a number or symbol inscribed or affixed for the purpose of identification. While the petitioner now claims that this definition is insufficient under 18 U.S.C. § 511, he once again fails to demonstrate that the Court's application of the term prejudiced the outcome of the trial. Although Kowalczyk claims that the numbers erased might have been for another purpose, such as "interchangeable parts replacement," he does not offer any support for the conclusion that such numbers exist, and even if they do, that these are the numbers referred to in the trial testimony. Moreover, the petitioner never states that he did not alter the VINs, or that he had altered this other type of identification number or symbol which the jury might have confused with the VINs. Accordingly, the Court finds that even if Gilroy's failure to raise this issue either at trial or on appeal constituted an omission below a professional standard of conduct, which the Court seriously doubts, Kowalczyk has not demonstrated any prejudice as a result of this omission.

■ The petitioner's second ineffective assistance of counsel argument under *Strickland* essentially reiterates his conflict of interest claim, namely that his trial attorney's alleged refusal to permit him to testify violated his Sixth Amendment rights. For the aforementioned reasons, the Court disagrees.

As stated above, Kowalczyk alleges that his trial counsel prevented him testifying on his own behalf in order to have the Wood Auto Body invoices admitted into evidence. However, when the defense attempted to have these records admitted under Fed. R.Evid. 803(6), the Court sustained the Government's objection because the witness could not provide the proper foundation. In his petition Kowalczyk offers no support for his argument that had he testified that these documents would have been admitted. Conspicuously absent from his moving papers are any allegations that he would have been able to satisfy the requirements of Fed. R.Evid. 803(6). Accordingly, Kowalczyk's request for relief pursuant to 28 U.S.C. § 2255 based on his ineffective assistance of counsel claims pursuant to *Strickland* is denied.

In reaching this conclusion, the Court notes that the petitioner's reliance on *United States v. Alegria*, 980 F.2d 830, 832 (2d Cir. 1992) is misplaced. *Alegria* addressed the viability of the defendant's double jeopardy argument on direct appeal. In reviewing the procedural history of the case, the Second Circuit noted that the trial court had dismissed the "VIN alteration" counts because "the government had failed to prove that the VIN numbers altered on the [car] were identification numbers of the kind referred to in 18 U.S.C. § 511 and 2321." *Id.* at 832. However, the Government did not challenge this determination on appeal, and there is no discussion as to how the Government failed to satisfy the statutory standard. Accordingly, the Court declines to afford the district court's decision in that case any precedential value.

**B.** *Aiding and abetting jury instruction*

The petitioner further argues that the Court erroneously instructed the jury that he could be found guilty as an aider or abettor under 18 U.S.C. § 2, because such an instruction,

> impermissibly expanded the scope in which the jury could find Kowalczyk culpable in the alteration of the VINs, in that the jury could conclude that Kowalczyk was guilty of the offense [because] someone else [other than himself] altered the numbers, . . .

even though the prosecution offered no such evidence of anothers [sic] involvement in the offense during trial.

In support of this position the petitioner relies on the Court's concern that an aiding and abetting charge might be inappropriate where the Government has failed to offer evidence of another actor being involved in the crime.

■ At the outset, the Court recognizes, and the petitioner admits, that although trial counsel objected to the jury instruction at trial, he did not raise the issue on appeal. Ordinarily, such an omission would require the defendant to demonstrate "cause" for the failure to raise the matter on direct appeal, and actual "prejudice" resulting therefrom. However, because Kowalczyk also raises this issue under the rubric of ineffective assistance of counsel, the Court will consider the merits of this argument under *Strickland*, namely whether failure to raise the issue constitutes representation below an objective standard of reasonableness, and that the defendant was prejudiced as a result of such conduct. *Strickland v. Washington*, 466 U.S. at 692, 104 S.Ct. at 2067.

Applying these standards, the Court finds that trial counsel's failure to raise the aiding and abetting jury instruction on appeal did not constitute ineffective assistance on counsel. As this Court stated on numerous occasions, the Government's case consisted almost exclusively of circumstantial evidence based essentially on proof that the cars purchased by Kowalczyk from Tech–Cor were checked for correct VIN numbers. However, after the petitioner repaired or restored the cars, and they were sold, Government investigators discovered that the VIN's had been obliterated or altered. Based on this evidence, the Court reasoned that Kowalczyk could be found guilty under 18 U.S.C. §§ 2 and 511 if he either altered the VINs himself or caused someone else to do so.

Trial counsel objected to the jury instructions, including an aiding and abetting charge, arguing that there was insufficient evidence of a second actor. The Court then denied the objection. Tr. 890–98, 925–27. Trial counsel later appealed the petitioner's

conviction based on a number of grounds which did not include the objection to the aiding and abetting charge.

The Court finds however, that Gilroy's decision not to raise this issue on appeal is insufficient to constitute ineffective assistance of counsel. Rather, this decision constitutes nothing more than a strategic decision to raise the issues that trial counsel found more likely to succeed. As a result, Gilroy's failure to raise this issue does not fall below the objective standard of reasonableness necessary to violate the Sixth Amendment.

C. *Variance between the indictment and the evidence presented at trial*

The petitioner's third argument is that the prosecution wrongfully presented evidence at trial relating to unlawful activity not addressed in the indictment. According to Kowalczyk, this evidence compelled him to defend himself in violation of his due process rights.

As a preliminary matter, the Court notes that issue was never raised either during the trial or on appeal. However, because the petitioner also raises this issue by way of an ineffective assistance of counsel claim, the Court will consider this argument under *Strickland.*

■ The Second Circuit has referred to claims that evidence at trial did not conform to the indictment as a "prejudicial variance," *United States v. Mucciante,* 21 F.3d 1228, 1236 (2d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 361, 130 L.Ed.2d 315 (1994) or a "constructive amendment," *see United States v. Attanasio,* 870 F.2d 809, 817 (2d Cir.1989), citing, *United States v. Mollica,* 849 F.2d 723, 729 (2d Cir.1988). A variance occurs when "the evidence adduced at trial establishes facts different from those alleged in the indictment," and violates the Fifth Amendment only when the defendant can demonstrate prejudice. *Mucciante,* 21 F.3d at 1236, citing, *Dunn v. United States,* 442 U.S. 100, 105, 99 S.Ct. 2190, 2193, 60 L.Ed.2d 743 (1979). A variance is immaterial where the allegation and proof substantially correspond, where the variance is not of a charac-

ter that could have misled the defendant at the trial, and where the variance would not deprive the accused of his right to be protected against another prosecution for the same offense. *Id.*

[19] On the other hand, a constructive amendment occurs when the terms of the indictment are effectively altered by the presentation of evidence and jury instructions which modify the "essential elements" of the offense charged, and there is a "substantial likelihood" that the defendant may have been convicted of an offense other than that charged. *Attanasio,* 870 F.2d at 817. A constructive amendment per se violates the grand jury guarantee of the Fifth Amendment. *Id.* Accordingly, where the indictment gives insufficient notice of the offense charged, the resulting prejudice requires reversal. *Id.*

■ Applying either standard, the Court finds that there has been no violation of Kowalczyk's Fifth or Sixth Amendment rights because he has failed to demonstrate either a variance or a constructive amendment of the indictment. The petitioner was indicted for tampering and altering VIN for "the listed vehicles." According to Kowalczyk, the prosecutor's opening statement effectively modified the indictment because it states that "[t]he evidence will show that in a number of cases the car that he sold was a different car entirely and a car that did not belong to him." Kowalczyk reasons that "[b]y altering the charging terms of the Indictment from 'altering the listed motor vehicles'" to charging the 'altering of a different car entirely,' the Prosecutor expanded the scope of the charges beyond that found, or ever presented, alleged or argued to the Grand Jury...." The Court disagrees.

The prosecutor's opening statement did not enlarge the scope of the crimes charged in the indictment. The Government's reference to a "different car entirely" did not refer to vehicles other than those specified in the indictment. According to the indictment, Kowalczyk would purchase Salvage Automobiles in order to obtain their VINs affixed to Similar Automobiles previously acquired. The prosecution's use of the phrase "different car entirely" merely refers to the Similar

Automobiles sold with the VINs from the Salvage Automobiles. Counts one through six of the Indictment indicate the VINs on the recovered automobiles directly relate to the crimes for which the petitioner was convicted. Accordingly, any ineffective assistance of counsel claim based on a failure to raise this argument is without merit.

### D. *Failure to admit Wood Auto Body invoices as business records*

■ The petitioner's fourth argument is that this Court abused its discretion by precluding the Wood Auto Body invoices from being admitted into evidence, and that trial counsel's failure to raise the issue on appeal constituted ineffective assistance of counsel. Again, based on the extended reasoning set forth above, the Court disagrees.

Applying the standards previously discussed, the Court finds that its decision to bar the admission of the Wood Auto Body records by the testimony of Linda Kowalczyk was not an abuse of discretion. Contrary to the petitioner's moving papers, which readily characterize Mrs. Kowalczyk as the petitioner's secretary, Mrs. Kowalczyk testified that although she does not work, Tr. 831, from time to time" she assisted her husband in his business activity by "keep[ing] his papers when he came home from work, [by] put[ting] them on the side." Tr. 823–24. She did not assist him in the selling of cars except by answering the phone once in a while. Tr. 824. Otherwise, she testified only that she had observed the records maintained by her husband. Tr. 825, 827. The closest Mrs. Kowalczyk comes to stating that she worked for her husband in any capacity was a statement that although she was "not sure about the business at all[, she] just kept the records and fed the family and took the kids to school and did [her] part." Tr. 833. Indeed when Mrs. Kowalczyk testified about where she got her own car, she stated that her husband bought it at an auction for her. Upon giving this testimony she was shown her statement to the FBI in which she said that she acquired her car from Cutty Motors, the dealership belonging to the witness Robert Salvatore. Tr. 840–42. Based on this vague and inconsistent testimony, the Court found that although Mrs. Kowalczyk was able to recognize the Wood Auto Body records, they were inadmissible hearsay. Tr. 847–48.

Upon closer review, the Court now finds that its earlier decision was not an abuse of discretion. Although Mrs. Kowalczyk stated that she recognized the documents, her testimony did not satisfy the requirements of Fed.R.Civ.P. 803(6). She did not testify as to whether the records were made contemporaneously with the event recorded by a person with knowledge during the regular course of business. Further, she was unable to demonstrate that the documents were otherwise trustworthy. According to her testimony, she had observed her husband's records on occasion, and sometimes assisted by answering the phone. Other than that, she was "not sure about the business at all." Therefore, contrary to the assertions of the petitioner, the Court stands by its original decision. As a result, the Court finds that trial counsel's failure to pursue this matter on appeal did not constitute ineffective assistance of counsel in violation of Kowalczyk's Sixth Amendment rights.

### E. · *Constitutionality of 18 U.S.C. § 511*

Kowalczyk attacks the constitutionality of 18 U.S.C. § 511, prohibiting the obliteration or alteration of VINs, on several grounds. Initially the petitioner contends that section 511 is unconstitutional because it is silent as to the " 'evil knowing,' 'mens rea,' or 'specific intent,'. that is mandated by the Fifth Amendment." In addition, Kowalczyk asserts that section 511 is unconstitutionally vague and ambiguous. Finally, the petitioner contends that section 511 is unconstitutional as it violates the commerce clause.

■ The petitioner's first argument is easily disposed of. Section 511(a) requires that the accused "knowingly removed, obliterated, tampered or altered the identification numbers." "To act 'knowingly' [section 511(a) ] is to act 'voluntarily and intentionally,' and not because of mistake or accident or other innocent reason." *United States v. Enochs*, 857 F.2d 491, 493 (8th Cir.1988), *cert. denied*, 490 U.S. 1022, 109 S.Ct. 1749, 104 L.Ed.2d 186 (1989), quoting, *Milentz v. United States*, 446 F.2d 111, 114 n. 4 (8th

Cir.1971). As such, the term "knowingly" would "exculpate innocent actors." *Enochs,* 857 F.2d at 494. Further, the legislative history of the statute demonstrates that section 511 was intended to "broadly prohibit the deliberate removal of VIN's except as necessary for repair in order to create powerful and 'much needed prosecutory tools' to combat auto theft." *Enochs,* 857 F.2d at 493, citing, *Motor Vehicle Theft Law Enforcement Act of 1984,* H.R.Rep. No. 98–1087, 98th Cong., 2d Sess. 1, *reprinted in* 1984 U.S.Code Cong. & Admin.News 4628, 4628–29. Accordingly, the Court finds that the petitioner's argument that section 511 is constitutionally infirm because it fails to require specific intent is without merit. *Enochs,* 857 F.2d at 494.

In reaching this conclusion the Court notes Kowalczyk's attempt to analogize the alteration of VIN numbers with the "morally innocent" acts for which severe penalties would violate the due process clause of the Fifth Amendment, a question specifically left open by the court in *Enochs. See id.* at 494 n. 2 (addressing "morally innocent acts" and the due process clause); *see also Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952) (addressing criminal liability for morally innocent acts); *United States v. Wulff,* 758 F.2d 1121 (6th Cir.1985) (same). However, unlike *Morissette,* which drew a distinction between offenses constituting "positive aggressions" and those in the "nature of neglect," *Morissette,* 342 U.S. at 255, 72 S.Ct. at 246, this case addresses a crime based on the deliberate obliteration of VINs. Accordingly, the Court rejects any argument that the defendant was somehow convicted for committing an otherwise morally innocent act.

■ Addressing the petitioner's second argument, the Court finds that section 511 is not unconstitutionally vague or ambiguous. Section 511(a) provides that it is unlawful to knowingly remove, obliterate, tamper with or alter a VIN. 18 U.S.C. § 511(a). Section 511(b) provides for an exception where the person who altered the VIN did so to make "reasonably necessary" repairs unless that individual knew the vehicle was stolen. 18 U.S.C. § 511(b). The petitioner contends

that the phrase "reasonably necessary for the repair" is unconstitutionally vague. The Court disagrees.

The term "reasonably necessary for the repair" as that term is applied in 18 U.S.C. § 511(b) provides sufficient notice to the public regarding prohibited conduct. Such repair activity must be undertaken "knowingly," which as discussed above requires voluntary and intentional action. *Enochs,* 857 F.2d at 493. In the Court's view, such language is sufficient to pass constitutional muster.

Before leaving the petitioner's due process arguments, the Court notes Kowalczyk's assertion that section 511 is unconstitutionally vague because he reads sections (b)(1) and (2) to require that the accused know that the vehicle or part was stolen *and* that the alteration alleged was reasonably necessary in order for criminal liability to attach. In the Court's view, Kowalczyk's reading of the statute is too narrow.

As stated above, section 511 provides:

(a) Whoever knowingly removes, obliterates, tampers with or alters an identification number for a motor vehicle, or motor vehicle part, shall be fined ... or imprisoned not more than five years, or both.

(b)(1) Subsection (a) of this section does not apply to a removal, obliteration, tampering, or alteration by a person specified in paragraph (2) of this subsection (unless such person knows that the vehicle or part involved is stolen).

(2) The persons referred to in paragraph (1) of this subsection are—

\* \* \* \* \* \*

(B) a person who repairs such vehicle or part, if the removal, obliteration, tampering, or alteration is reasonably necessary for the repair[.]

This language provides for a two part exception. Subsection (b)(2) provides that liability will not attach where the alteration is reasonably necessary for repair. Subsection (b)(1) carves out an exception to the exception where the reasonably necessary repair is made by an individual who knows that the vehicle is stolen. This two part exception is

set forth in two coequal subsections, (b)(1) and (b)(2). In the Court's view, if the petitioner's more narrow reading of the statute were appropriate, the exception would be better set forth in a single subsection with conjunctive language. Accordingly, consistent with the statute's language and legislative history, *see Enochs,* 857 F.2d at 493, the Court reads section 511(b)(2) expansively, requiring proof only that the accused knowingly altered the VINs in a manner that was not reasonably necessary for repair *or* that he knew the vehicle was stolen. As a result, the Court finds that section 511 is not unconstitutionally vague or ambiguous.

■■■ The petitioner's final constitutional argument is that 18 U.S.C. § 511 violates the commerce clause under the recent Supreme Court decision *United States v. Lopez,* —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). In *Lopez,* the Supreme Court addressed the constitutionality of the Gun–Free School Zones Act of 1990 which created a federal offense "for any individual knowingly to possess a firearm at a place that the individual knows, or has reasonable cause to believe, is a school zone." 18 U.S.C. § 922(q)(1)(A) (1988 Supp. V). The statute does not contain a requirement that the possession be connected to interstate commerce. *Lopez,* —— U.S. at ——, 115 S.Ct. at 1626.

In defining the contours of commerce clause, the court recognized

> three broad categories of activity that Congress may regulate under its commerce power. *Perez v. United States,* [402 U.S. 146, 150, 91 S.Ct. 1357, 1359, 28 L.Ed.2d 686 (1971) ]; *see also [Hodel v.] Virginia Surface Mining & Reclamation Ass'n,* [452 U.S. 264, 276–77, 101 S.Ct. 2352, 2360–61, 69 L.Ed.2d 1 (1981) ]. First, Congress may regulate the use of the channels of interstate commerce. *See, e.g., [United States v.] Darby,* 312 U.S. [100, 114, 61 S.Ct. 451, 457, 85 L.Ed. 609 (1941) ]; *Heart of Atlanta Motel, Inc. [v. United States,* 379 U.S. 241, 256, 85 S.Ct. 348, 356, 13 L.Ed.2d 258 (1964) ].... Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the

threat may come only from intrastate activities. *See, e.g., Shreveport Rate Cases,* 234 U.S. 342 [34 S.Ct. 833, 58 L.Ed. 1341] (1914); *Southern R. Co. v. United States,* 222 U.S. 20 [32 S.Ct. 2, 56 L.Ed. 72] (1911).... Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, *[NLRB v.] Jones & Laughlin Steel,* 301 U.S. 1, 37 [57 S.Ct. 615, 624, 81 L.Ed. 893] (1937), *i.e.,* those activities that substantially affect interstate commerce.

*Lopez,* —— U.S. at —— ——, 115 S.Ct. at 1629–30. Further elaborating on the third standard, namely the "substantially affects interstate commerce test," the court stated that "[w]here economic activity substantially affects interstate commerce, legislation regulating that activity will be sustained." *Id.* at ——, 115 S.Ct. at 1630.

Applying these standards, the court held that 18 U.S.C. § 922(q) did not sufficiently affect interstate commerce to withstand constitutional attack under the commerce clause. In support of this conclusion the court reasoned that section 922(q) is not part of a larger regulation of economic activity which would be further undercut unless intrastate activity were regulated. *Id.* at ——, 115 S.Ct. at 1631. Further, section 922(q) does not contain any jurisdictional element which would assure that the firearm possession at issue would affect interstate commerce and Congress made no findings regarding the effect of the prohibited activity on interstate commerce. *Id.*

Applying the standards set forth in *Lopez* the Court finds that section 511 represents a constitutional exercise of congressional authority. This conclusion is based on two considerations. First, unlike firearms, the motor vehicles themselves are instrumentalities of interstate commerce, their purpose being transportation. Indeed the record before this Court indicates that the crimes at issue were committed with cars transported from New Jersey to New York.

Second, the legislative history of section 511, cited by the *Enochs* court, *see Enochs,* 857 F.2d at 493, citing, *Motor Vehicle Theft Law Enforcement Act of 1984,* H.R.Rep. No.

98–1087, 98th Cong., 2d Sess. 1, *reprinted in* 1984 U.S.Code Cong. & Admin.News 4628, 4628–29, demonstrates that section 511 was enacted as part of a growing interstate and international auto theft problem which Congress sought to address. Unlike *Lopez*, the relevant House Report expressly states:

> Motor vehicle theft continues to be a problem of major proportion with thefts reported totaling over 1 million motor vehicles annually. While the incidence of theft is increasing, the recovery rate of stolen vehicles is declining. As a result, auto theft has reportedly grown to a $5 billion per year *national problem* with costs borne by all Americans in increased law enforcement costs and higher insurance costs.

H.R.Rep. at 1 (emphasis added). Further Congress found "substantial evidence" that between 10,000 and 20,000 stolen vehicles are exported to Mexico every year. *Id.* at 5. Accordingly, the Court finds that the regulation of automobile theft "substantially affects interstate commerce" sufficient to satisfy the requirements of *Lopez*. As a result, Kowalczyk's constitutional arguments are without merit.

### F. Failure to disclose Brady material

The petitioner's final argument is that he is entitled to habeas relief because of the prosecution's failure to divulge the following *Brady* material, *see Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963): (1) "FBI Accomplishment reports;" (2) exculpatory VIN impressions; (3) a "conspiracy theory;" (4) the intended use of the witness Agnes Lane prior to trial; (5) the knowing use of perjured testimony; (6) the prosecution's vouching for the testimony of its witnesses in closing; and (7) failure to disclose arrest records of an interested witness and related individual. At the outset, the Court makes two preliminary notes. First, although several of these arguments are better recast in terms other than a failure to disclose *Brady* material, because of the length of Kowalczyk's moving papers, the Court will treat them in the same order as the petitioner in order to facilitate any appellate review.

Second, although the petitioner has failed to raise the alleged *Brady* violations either before the trial court or on direct appeal, he contends in his reply papers that the failure of his trial counsel to make these arguments further supports his ineffective assistance of counsel claims and therefore should be considered by this Court. *See Billy–Eko*, 8 F.3d at 114. Moreover, even if *Billy–Eko* were inapplicable, Kowalczyk asserts that he has satisfied the "cause" and "prejudice" standard, *see Ciak*, 59 F.3d at 301, necessary to assert his *Brady* claims as he could not possibly have asserted these arguments without the withheld material which he has diligently attempted to obtain. Giving the petitioner the benefit of any doubt, the Court will address the merits of his arguments as they relate to his ineffective assistance of counsel claim.

The principles underlying *Brady*, were recently set forth by the Supreme Court in *Kyles v. Whitley*, —— U.S. ——, —— – ——, 115 S.Ct. 1555, 1565–66, 131 L.Ed.2d 490 (1995). Under *Brady*, the prosecution's suppression of evidence favorable to the accused upon request violates due process where the evidence is material to guilt or punishment, irrespective of the Government's intentions. *Brady*, 373 U.S. at 87, 83 S.Ct. at 1196.

In *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the Supreme Court expanded this principle to include situations in which the defendants failed to request favorable evidence. *Id.* at 103–04, 96 S.Ct. at 2397–98. In *Agurs*, the court distinguished three situations in which a *Brady* claim might arise: (1) where previously undisclosed evidence revealed that the prosecution knowingly introduced perjured testimony; (2) where the Government failed to accede to a defense request for disclosure of some specific kind of exculpatory evidence; and (3) where the prosecution failed to volunteer exculpatory evidence never requested, or requested in a general way. *Id.* at 103–07, 96 S.Ct. at 2397–99.

In *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), the court disavowed the difference between exculpatory and impeachment evidence un-

der *Brady* and abandoned the distinction between the second and third *Agurs* classifications, namely, the "specific request" and "general or no request" situations. Under *Bagley,* regardless of the request, favorable evidence is material and constitutional error will result if there is a reasonable probability that had the evidence been disclosed, the result of the trial would have been different. *Id.* at 682, 105 S.Ct. at 3383. The test for a "reasonable probability" is not "whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles,* ──── U.S. at ────, 115 S.Ct. at 1566, citing, *Bagley,* 473 U.S. at 678, 105 S.Ct. at 3381.

■■■■■ *Bagley* materiality requires that the suppressed evidence be considered in the cumulative, not item-by-item. As a result, the constitution "is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense." *Id.* at ────, 115 S.Ct. at 1567, citing, *Bagley,* 473 U.S. at 675, 105 S.Ct. at 3379. Nevertheless, "[w]hile the definition of *Bagley* materiality in terms of the cumulative effect of suppression must accordingly be seen as leaving the government with a degree of discretion, it must also be understood as imposing a corresponding burden." *Kyles,* ──── U.S. at ────, 115 S.Ct. at 1567. On the one hand, demonstrating that the prosecution knew of an item of favorable evidence unknown to the defense does not in and of itself result in a *Brady* violation. *Id.* But the prosecution, which alone can know what is undisclosed, must be assigned the consequent responsibility to gauge the likely net effect of all such evidence and make disclosure when the "reasonable probability" is reached. *Id.*

Having set forth the applicable standards the Court now turns to the petitioner's arguments. Kowalczyk alleges several *Brady* violations. For the sake of clarity, the Court will address each contention separately.

1. *The FBI Accomplishment Report*

■■■■ Kowalczyk's first *Brady* claim is that the Government wrongfully failed to produce an FBI Accomplishment Report ("Document 70"). According to the petitioner, Document 70 could have been used to impeach the credibility of Government witness Detective Thomas Knobel, who testified as to the chemical process used to restore of original confidential VIN's which had been previously altered or obliterated. Kowalczyk reasons that the prosecution's withholding Document 70 was tantamount to knowingly permitting perjury. The Court disagrees.

Document 70 was not material to the petitioner's guilt or punishment. The report, dated February 16, 1988, is from the Assistant Director In Charge of the FBI's New York office to the Bureau's Director in Washington, D.C. Document 70 indicates that the VINs on a number of seized automobiles had been obliterated and that it was "virtually impossible to identify the past owners of these vehicles." Doc. 70 at 1. The report also documented the efforts of the National Crime Information Center to attempt to identify the previous owners which met with limited success. However, the report further notes that in at least one instance a "derivative of the CVIN [confidential VIN] was raised by a chemical process" employed by the New York City Police Department. There is no information contained in the report which would tend to discredit Detective Knobel's defense. As a result, Document 70 does not constitute *Brady* material, the suppression of which would constitute a deprivation of the petitioner's constitutional rights.

2. *The duty to disclose exculpatory VIN impressions*

■■■ The petitioner's next argument is that the prosecution failed to disclose VIN impressions, namely impressions of the true VINs raised by chemical processes during the investigation. However, no such impressions were ever offered into evidence at trial despite their being listed on the Government's exhibit list. In addition, these exhibits were made available to the petitioner prior to the trial, each being marked as a Government exhibit. Accordingly, the subsequent production of these VIN impressions is irrelevant. As a result, the Court declines to

find that the suppression of these impressions constitutes a *Brady* violation.

■ However, this determination does not end the inquiry. The petitioner further argues that during the trial, Detective Knobel testified that it was not possible to make imprints of the chemically raised VINs because they do not appear for more than a "split second." Kowalczyk contests this conclusion because "in a contemporaneous investigation by the [New York Police Department] and FBI in North Carolina in their investigation of Mr. Edward Janis and Wood Auto Body and others, the government was able to make imprints of the VIN alterations and did record the VINs for evidence." The petitioner reasons that the mere existence of such impressions "vitiates the testimony of the Government's witness, Detective Knobel, and gives credence to the allegation that *Brady* materials were withheld." The undercurrent of this argument, although not expressly stated by the petitioner, is that Kowalczyk was denied the opportunity to impeach Detective Knobel's testimony at trial with this information. Again, the Court disagrees.

The petitioner's allegations are insufficient to merit habeas relief merely because a VIN impression may have been made in a second investigation. Assuming that some type of impression was made in the second investigation, the petitioner offers no evidence that the surrounding circumstances were similar. Simply because the numbers raised by the chemical processes applied by Detective Knobel exposed VIN numbers that could not be used to make impressions does not mean that the same conclusions must hold true for an investigation conducted in North Carolina. There is no evidence that the same techniques were employed or that the similar conditions existed. Accordingly, it is possible that while Detective Knobel was unable to take impressions of the chemically raised VINs in this case, other detectives working on other investigations were able to obtain some kind of impression. As a result, the Court finds that Government's alleged failure to disclose VIN impressions, did not rise to the level of a constitutional violation.

### 3. Failure to disclose the alleged "conspiracy theory"

■ The petitioner's third *Brady* claim is that the prosecution failed to disclose its theory that one of its main witnesses, Robert Salvatore, who testified with immunity, was a co-conspirator with Kowalczyk. This argument is based on a reference made to Salvatore as a co-conspirator in the Government's brief responding to the appeal of this Court's denial of the petitioner's motion for a modification of sentence pursuant to Fed.R.Crim.P. 35. Based on this reference, Kowalczyk further concludes that Salvatore's name was deleted from Document 70.

■ The petitioner's "co-conspirator theory" argument is easily dismissed. *Brady* and its progeny address the disclosure of exculpatory *facts*. The rights of the accused to *Brady* material do not include the prosecution's "theories" regarding the actors in a particular unlawful activity. Moreover, the trial record is replete with references to Robert Salvatore's role in the criminal conduct at issue. *See, e.g.,* Tr. 19–20 (addressing Salvatore's immunity); Tr. 289–91 (addressing his relationship with Kowalczyk); Tr. 292 (specifying that Kowalczyk paid Salvatore in cash). Accordingly, the Court finds that the petitioner's due process rights were not violated under *Brady,* and as a result, trial counsel's failure to raise this issue does not constitute a violation of the Sixth Amendment.

### 4. Failure to disclose intended use of trial testimony of Agnes Lane

The petitioner's fourth *Brady* argument is that the prosecution failed to disclose its intended use of the testimony of Agnes Lane ("Lane"). Although Kowalczyk labels this argument as a failure to disclose *Brady* material, he contends in his moving papers that Government's suppression of Lane's identity constitutes a violation of Fed.R.Crim.P. 12.1. Rule 12.1(a) requires that the defendant disclose his "intention to offer a defense of alibi." Fed.R.Crim.P. 12.1(a). Within ten days thereafter, the Government is obligated to provide a list of witnesses it will use to place the accused at the crime scene. Fed. R.Crim.P. 12.1(b). Rule 12.1(c) provides:

If prior to or during trial, a party learns of an additional witness whose identity, if known, should have been included in the information furnished under subdivision (a) or (b), the party shall promptly notify the other party or the other party's attorney of the existence and identity of such additional witnesses.

Fed.R.Crim.P. 12.1(c).

■ The purpose of Rule 12.1 is to prevent the defense from surprising the Government with alibi witnesses. *See Williams v. Florida,* 399 U.S. 78, 81–82, 90 S.Ct. 1893, 1895–96, 26 L.Ed.2d 446 (1970); 1 Charles A. Wright, Federal Practice and Procedure: Criminal § 201 (2d ed. 1982). Accordingly, the Government's obligation with respect to the Rule is to identify witnesses who will place defendant's at the scene of the crime, thereby rebutting the alibi defense. *See* Wright at § 203.

■ Lane's testimony demonstrated that she parked her car near her place of business, and when she returned it was missing. The car later was later identified as one of the Similar Vehicles whose VIN had been obliterated by Kowalczyk. Tr. 666–71. According to the petitioner, the purpose of Lane's testimony was to "impassion the jury" without giving proper notice, and cause an "inference" that the vehicles at issue were stolen, when no such theory was presented to the grand jury and the Court had admonished the prosecutor to ensure that the word "stolen" was not used. Tr. 653, 660–61.

In the Court's view, the petitioner misapplies Rule 12.1. The Government did not intentionally withhold Lane's identity to gain a strategic advantage. Lane was called after the Court refused to permit the admission of evidence that the cars had been stolen through the introduction of police reports. *See* Tr. 640. The use of Lane's testimony had nothing to do with an alibi defense or placing Kowalczyk at the scene of the crime. Accordingly, Rule 12.1 is inapposite. Similarly, no other rule requires the disclosure of Government witnesses prior to trial although the Court has the discretion to direct such disclosure. *United States v. Payden,* 613 F.Supp. 800, 821 (S.D.N.Y.1985), citing, *United States v. Cannone,* 528 F.2d 296, 301 (2d

Cir.1975). Accordingly, Kowalczyk's contention's regarding the Government's failure to disclose Lane's identity prior to trial will not support a claim for ineffective assistance of counsel based on a failure to raise this issue.

### 5. *Use of perjured testimony*

■ The petitioner further argues that the Government violated his constitutional rights under *Brady* by permitting one of its key witnesses, Robert Salvatore, to commit perjury. Specifically, Kowalczyk contends that Salvatore testified that the petitioner had consigned vehicles to him for $400 when in reality, Salvatore had purchased those vehicles. According to Kowalczyk, this conclusion is supported by an FBI record containing repair receipts and checks signed by Salvatore, payable to Janis and Island Auto Wreckers. The petitioner reasons that these receipts would undermine Salvatore's testimony because it contradicts his testimony that he let others use his retailer's license to sell cars. Tr. 427. The Court disagrees.

There is nothing inconsistent between these receipts and Salvatore's testimony. Even if the Court adopts Kowalczyk's reasoning, the receipts demonstrate that Salvatore had some cars repaired. This conclusion does not preclude Salvatore from acting as middleman with respect to the sale of other automobiles. Indeed, there is no evidence that the cars which were repaired were the same cars at issue in the petitioner's criminal conviction. Accordingly, Kowalczyk has failed to demonstrate that the Government knowingly employed perjured testimony and his claim for ineffective assistance of counsel based on the failure to raise this issue is denied.

### 6. *The Government's vouching for the credibility of its witnesses*

■ Kowalczyk also claims that the Government wrongfully vouched for the credibility of Detective Knobel's testimony during its summation. In support of this argument the petitioner relies on two of the prosecutor's statements: (1) that "Detective Knobel's testimony was unequivocal[ ];" Tr. 949, and (2) Detective Knobel "is an officer who is sworn to uphold the law, not to come in court and lie." Tr. 1028.

It has long been held that it is improper for the prosecution to vouch for the credibility of a witness. *United States v. Young,* 470 U.S. 1, 8, 105 S.Ct. 1038, 1042, 84 L.Ed.2d 1 (1985); *United States v. Parker,* 903 F.2d 91, 100 (2d Cir.1990). However, the Court finds that in this instance, the prosecutor's comments did not rise to the level of vouching sufficient to warrant habeas relief.

The first statement relied upon by Kowalczyk is taken out of context. The petitioner quotes the prosecutor stating that Detective Knobel's testimony was "unequivocal." However, a review of the transcript reveals that the full text of that statement was that "Thomas Knobel's testimony was unequivocally [that on] each one of the cars that the defendant bought and sold, the confidential vehicle identification number obliterated, chiseled right out." Tr. 949. In the Court's view this statement does not amount to "vouching." Rather, this statement constituted a permissible description of the testimony. *See Parker,* 903 F.2d at 100–01; *United States v. Ricco,* 549 F.2d 264, 274 (2d Cir.), *cert. denied,* 431 U.S. 905, 97 S.Ct. 1697, 52 L.Ed.2d 389 (1977).

The second statement, that officer Knobel is an "officer who is sworn to uphold the law, not to come in court and lie" presents a stronger argument. However, the Second Circuit has recognized, that "[w]hile the prosecutor should avoid statements such as '[the government witness]' told the truth," if the summation does not amount to "urg[ing] that the jury should accept [the] testimony because the government believed it," a reversal is unwarranted. *Parker,* 903 F.2d at 101; *see also United States v. Smith,* 778 F.2d 925 (2d Cir.1985). The Court finds that while this latter statement perhaps should not have been made, it did not constitute "vouching," and Gilroy's failure to object to the statement did not constitute ineffective assistance of counsel.

#### 7. *Failure to disclose Edward Janis' arrest record and Robert Salvatore's prior conviction*

 The petitioner's final argument is that the Government wrongfully failed to disclose the prior arrest record of Edward Janis' automobile related crimes, namely theft and alteration of VINs, and the prior conviction of Robert Salvatore for auto theft. According to Kowalczyk, the suppression of this evidence "blinded" the jury and his "conviction and the probability of acquittal ... if the information had been disclosed is more likely than not." Once again, the Court disagrees.

The Government was not obligated to produce the Janis arrest record, assuming the prosecution was in possession of such information, as Janis was not a witness at the trial. With respect to the Salvatore's criminal record, the trial transcript demonstrates that the defense counsel was already in possession of this information as it was referred to in the trial record. *See* Tr. 34. Accordingly, the Court finds that the Government did not violate its responsibility to disclose exculpatory material under *Brady* and its progeny and the petitioner's ineffective assistance of counsel argument based on this ground is without merit.

#### G. *The remaining motions*

Having rejected the arguments contained in Kowalczyk's petition for habeas relief pursuant to 18 U.S.C. § 2255, the Court turns briefly to his outstanding motions for summary judgment and contempt sanctions. The summary judgment motion is easily disposed of. In this decision, the Court will deny Kowalczyk's petition for habeas relief on its face, and therefore, denies his motion for summary judgment.

Further, the Court denies Kowalczyk's motion for contempt sanctions against Police Commissioner William Bratton and the New York City Police Department for failure to comply with a subpoena of this Court. Parenthetically the Court notes that since this motion was filed, William Bratton has been replaced with Howard Safir as Police Commissioner. This change of office however, has no effect on the disposition of this motion.

 Failure to comply with a subpoena may support a contempt citation pursuant to Fed.R.Civ.P. 45(e). However, inability to comply with the subpoena constitutes an adequate excuse and a defense to a contempt motion. *See United States v. Bryan,* 339

**1150**

U.S. 323, 330, 70 S.Ct. 724, 730, 94 L.Ed. 884 (1950).

■ On October 17, 1995, the Police Department received a subpoena for certain discoverable material. On October 19, 1995, the Police Department immediately responded in writing that the description of material sought was not specific enough to determine what information was being sought. Although Kowalczyk characterizes this response as a "subterfuge" to "evade answering the . . . subpoena," the Court disagrees and finds that this response constitutes an adequate excuse sufficient to excuse non compliance. As a result, Kowalczyk's motion for a contempt citation pursuant to Fed. R.Civ.P. 45(e) is denied.

III. *Conclusion*

Having reviewed the submissions of both parties, as well as the related case files, it is hereby

ORDERED, that the petitioner's motion for habeas relief pursuant to 18 U.S.C. § 2255 is denied in all respects; it is further

ORDERED, that the petitioner's motion for summary judgment pursuant to Fed. R.Civ.P. 56 is denied; it is further

ORDERED, that the petitioner's motion for bail pending adjudication of the pending habeas petition is denied; it is further

ORDERED, that the petitioner's motion for a contempt citation against the Police Commissioner of New York City and the New York City Police Department is denied; and it is further

ORDERED, that the Clerk of the Court close this case.

SO ORDERED.