John BILLY–EKO, Petitioner–Appellant,

v.

UNITED STATES of America,
Respondent–Appellee.

No. 990, Docket 91–2456.

United States Court of Appeals,
Second Circuit.

Submitted Aug. 20, 1993.

Decided Oct. 25, 1993.

Michele L. Adelman, New York City (Fried, Frank, Harris, Shriver, & Jacobson, of counsel), for petitioner-appellant.

Emily Berger, Asst. U.S. Atty. E.D.N.Y. (Zachary W. Carter, U.S. Atty., E.D.N.Y., of counsel), for respondent-appellee.

Before: PIERCE and ALTIMARI, Circuit Judges, and KEENAN, District Judge.*

* The Honorable John F. Keenan, United States District Court for the Southern District of New York, sitting by designation.

ALTIMARI, Circuit Judge:

Petitioner-appellant John Billy–Eko appeals from a judgment of the United States District Court for the Eastern District of New York (Nickerson, J.), denying petitioner's motion for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 and denying his motion for reconsideration. The district court denied the petition on the merits. We affirmed the district court's denial of the writ on the ground that Billy–Eko procedurally defaulted his habeas claims by failing, without cause, to raise them on direct appeal from his conviction. 968 F.2d 281 (2d Cir. 1992). This decision was vacated by the United States Supreme Court, and remanded to this Court "for further consideration in light of the position asserted by the Acting Solicitor General in his brief for the United States." —— U.S. ——, 113 S.Ct. 2989, 125 L.Ed.2d 685 (1993). After considering not only that position but the arguments of counsel for both Billy–Eko and the United States Attorney for the Eastern District, we hold that Billy–Eko's claims of ineffective assistance are not procedurally defaulted for failure to raise them on direct appeal. We also hold, however, that those claims are without merit, and affirm the judgment of the district court dismissing the petition for habeas corpus.

## BACKGROUND

The evidence at trial established the following. On April 15, 1987, Billy–Eko arrived at John F. Kennedy International Airport ("JFK") as a passenger aboard Nigeria Airways Flight No. 850, from Lagos, Nigeria. Billy–Eko was a pilot for that airline, but was not part of the crew for that flight. He did, however, travel in full uniform and passed through customs along with the crew. At trial, the government argued that his presence in uniform was based on his anticipation that crew members would not be searched upon disembarking. On that day, though, customs inspectors at JFK decided to search both the passengers and crew of the Nigeria Airways flight. Upon searching Billy–Eko,

who initially protested the search, inspectors discovered over three pounds of heroin concealed in his carry-on bag and over four pounds of heroin in the pockets of his raincoat.

Billy–Eko was subsequently arrested and charged with importing heroin into the United States, in violation of 21 U.S.C. §§ 952(a) & 960(b)(1), and with possessing heroin with the intent to distribute, in violation of 21 U.S.C. §§ 841(a) & 841(b)(1)(A)(i). After a five-day jury trial during which Billy–Eko was represented by counsel, Billy–Eko was convicted as charged. He was thereafter sentenced to two concurrent ten-year terms of imprisonment, to be followed by two concurrent five-year terms of supervised release, and was ordered to pay a special assessment on each count.

Billy–Eko thereafter appealed his conviction, represented by new counsel. On direct appeal, Billy–Eko contended that the district court abused its discretion by disallowing certain testimony and by allowing the jury to handle the heroin found in Billy–Eko's bag and raincoat. This court affirmed the conviction in an unpublished summary order. *United States v. Billy–Eko*, 863 F.2d 46 (2d Cir.1988) (mem.).

Two years later, Billy–Eko, proceeding *pro se*, filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255 in the United States District Court for the Eastern District of New York (Nickerson, *J.*). In his motion, Billy–Eko raised several claims of ineffective assistance of trial counsel and prosecutorial misconduct, none of which were raised on direct appeal. The district court denied the motion on the merits and denied a subsequent motion for reconsideration, although the court also amended Billy–Eko's sentence by substituting a term of special parole for the previously imposed term of supervised release.

Billy–Eko appealed the district court's denial of the motion, now represented by counsel previously uninvolved in any prior aspect of his case. On appeal, he again raised claims of ineffective assistance of trial counsel and of prosecutorial misconduct. His claims of ineffective assistance, however, were largely different from those brought before the district court. We did not reach

the merits of his claims, holding that his failure to raise the claims on direct appeal without cause constituted a procedural default preventing us from considering their merits. *Billy–Eko*, 968 F.2d at 283.

Specifically, we relied upon our holding in *Campino v. United States*, 968 F.2d 187 (2d Cir.1992), which adopted the "cause and prejudice" test to determine whether a federal defendant has waived a constitutional claim under § 2255 by failing to raise it on direct review. *Billy–Eko*, 968 F.2d at 283. Applying this test, we found that Billy–Eko could not establish cause for his failure to raise his ineffective assistance claims on direct appeal. *Id.*, at 283. We did not reach the merits of his claims.

This holding was vacated by the Supreme Court. *Billy–Eko v. United States*, — U.S. ——, 113 S.Ct. 2989, 125 L.Ed.2d 685 (1993). The Court remanded for "further consideration in light of the position asserted by the Acting Solicitor General in his brief for the United States filed May 28, 1993." *Id.* In contrast to its prior practice, *see, e.g., Gibson v. United States*, 329 U.S. 338, 344 n. 9, 67 S.Ct. 301, 304 n. 9, 91 L.Ed. 331 (1946); *United States v. Young*, 315 U.S. 257, 258–59, 62 S.Ct. 510, 511, 86 L.Ed. 832 (1946), the Court did not undertake an independent assessment of whether our judgment was correct, but, following its more recent practice, *see, e.g., Diaz–Albertini v. United States*, 498 U.S. 1061, 111 S.Ct. 776, 112 L.Ed.2d 839 (1991); *Alvarado v. United States*, 497 U.S. 543, 110 S.Ct. 2995, 111 L.Ed.2d 439 (1990), simply remanded so that we might consider the views of the Solicitor General. We are now presented directly with the question whether a § 2255 petitioner, raising under the Sixth Amendment an ineffective assistance of counsel challenge to his federal conviction, is procedurally barred from making that challenge for failure to raise the issue on direct appeal.

## DISCUSSION

I. *Ineffective Assistance Claims in § 2255 Petitions*

A. *The General Rule: Allowing Claims in § 2255 Petitions*

██ It is well-settled that where a petitioner does not bring a claim on direct ap-

peal, he is barred from raising the claim in a subsequent § 2255 proceeding unless he can establish both cause for the procedural default and actual prejudice resulting therefrom. *See United States v. Frady,* 456 U.S. 152, 167–68, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1982). In *Campino,* we applied this "cause and prejudice" requirement to federal prisoners seeking relief under § 2255 for even constitutional errors. *See Campino,* 968 F.2d at 190.

*Campino* dealt with a challenge brought under the Fourth Amendment. In the first *Billy–Eko* opinion, we relied on *Campino* in holding that Billy–Eko's Sixth Amendment claims were subject to the cause and prejudice test because of his failure to raise them on direct appeal. *Billy–Eko,* 968 F.2d at 283.

The failure to raise ineffective assistance of counsel claims on direct appeal, however, should not necessarily be treated similarly to a failure to raise other constitutional claims. As the Solicitor General pointed out in his brief to the Supreme Court, there are several justifications for allowing ineffective assistance claims to be brought on collateral attack even if not brought on direct appeal, or even for establishing a preference that the claims be brought on collateral attack. *See United States v. Cronic,* 466 U.S. 648, 667 n. 42, 104 S.Ct. 2039, 2051 n. 42, 80 L.Ed.2d 657 (1984) (noting argument by Solicitor General that ineffective assistance claims are more properly brought in § 2255 petitions than on direct appeal). In many instances, an accused will be represented by the same counsel at trial and during direct appeal. In such cases, it would be unrealistic to expect that trial counsel would be eager to pursue an ineffective assistance claim. Moreover, even the scrupulous attorney searching the record in good faith would likely be blind to his derelictions at the trial level.

■ Primarily, though, ineffective assistance claims are appropriately brought in § 2255 petitions even if overlooked on direct appeal because resolution of such claims often requires consideration of matters outside the record on direct appeal. *See United States v. Matos,* 905 F.2d 30, 32 (2d Cir.1990) (pointing out that a claim for ineffective as-

sistance must usually be made to the district court for factual findings, in order to develop a "full factual record"). Ineffective assistance claims are often based on assertions that trial counsel made errors of omission, errors that are difficult to perceive from the record: for example, neglecting to call certain witnesses or introduce certain evidence. The claims might also be based on a conflict of interest not apparent at trial. Proof is sometimes provided in attorney-client correspondence, or in other documents not introduced at trial. Even if a new attorney represents the accused on direct appeal, she might not come across reasons to suspect ineffective assistance in preparing a direct appeal. *See, e.g., United States v. Taglia,* 922 F.2d 413, 418 (7th Cir.) ("[I]n the usual case extrinsic evidence is necessary to prove that counsel's assistance was ineffective, because without such evidence counsel's apparent pratfalls will be presumed to be failed strategems rather than professional malpractice."), *cert. denied,* —— U.S. ——, 111 S.Ct. 2040, 114 L.Ed.2d 125 (1991).

For these reasons, other circuits have clearly established a preference for allowing ineffective assistance claims on § 2255 petitions rather than direct appeal. *See United States v. Thompson,* 972 F.2d 201, 203–04 (8th Cir.1992); *United States v. Daniel,* 956 F.2d 540, 543 (6th Cir.1992); *United States v. McGill,* 952 F.2d 16, 19 (1st Cir.1991); *United States v. DeFusco,* 949 F.2d 114, 120 (4th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1703, 118 L.Ed.2d 412 (1992); *United States v. Mal,* 942 F.2d 682, 689 (9th Cir. 1991); *United States v. Rieger,* 942 F.2d 230, 235 (3d Cir.1991). We substantially agree that in most cases there is good reason to allow a defendant to make ineffective assistance claims on collateral attack even if those claims were not brought on direct appeal. We therefore join the other circuits in allowing petitioners in most cases to make those claims under § 2255, subject to the limitation discussed below.

**B.** *Limitation on the General Rule: Restricting Claims*

There are still some situations where a procedural bar to a § 2255 petition claiming

ineffective assistance is appropriate. Some circuits have explicitly crafted a limitation on the general rule allowing such claims on collateral attack. This limitation generally applies where: (1) the petitioner was represented by new appellate counsel at direct appeal, and (2) the claim is based solely on the record developed at trial. *See generally, United States v. Phillips,* 914 F.2d 835, 846 (7th Cir.1990) ("Of course, when an appellate court is able to evaluate the grounds upon which trial counsel is said to be ineffective on the existing record, the claim of ineffectiveness is forfeited if not initially raised on appeal."); *Beaulieu v. United States,* 930 F.2d 805, 807 (10th Cir.1991) (holding that procedural bar to ineffective assistance claims in collateral proceedings applies in "situations where the defendant is no longer represented by trial counsel and it is evident that resolution of the ineffectiveness claim would not be substantially aided by further development of the record"). In those circumstances, the rationale for allowing the claims in a § 2255 motion—the lack of a developed record and the possibility of counsel arguing against her own competence—no longer applies.

█ We agree that defendants should raise their claims of ineffective assistance at the earliest feasible opportunity. If the defendant has new appellate counsel on direct appeal, and the record is fully developed on the ineffective assistance issue, there is little reason to extend the defendant an unlimited opportunity to delay bringing the claim. Thus, in this narrow category of cases, but only in these cases, the petitioner must still show cause for not bringing the ineffective assistance claim on direct appeal, and prejudice resulting therefrom.

The Solicitor General argues that adopting this limitation on the general exception for ineffective assistance claims might confuse defendants and attorneys in the future. We disagree. A *per se* rule allowing all ineffective assistance claims to be brought in § 2255 motions would not be in the best interests of judicial economy and finality. If a claim can be brought on direct appeal, if it is viable and ripe, it should be brought without undue delay. *See Taglia,* 922 F.2d at 418.

Nor do we think that the standard we are adopting causes unnecessary confusion or hardship. This restriction does require new appellate counsel on direct appeal to bring viable ineffective assistance claims on direct appeal, but only if those claims are based solely on the record developed before the district court. For example, in *United States v. Fulton,* 5 F.3d 605 (2d Cir.1993), trial counsel for the defendant was implicated in narcotics transactions involving a cooperating codefendant. The codefendant was prepared to testify that trial counsel had received a portion of a shipment of heroin, and that counsel was involved with drug trafficking. The government revealed this information to the district judge, who in turn disclosed the allegations to the defendant. The defendant was fully advised of the conflict, and of his options, and chose to continue to retain the trial counsel. On appeal, this Court found that the inherent conflict of interest constituted ineffective assistance of counsel. *See* 5 F.3d at 613–14. For our purposes in the instant case, we note that this is the type of claim that would properly be brought on direct appeal: all of the information on which the claim was based came from the recorded discussions among the government, the district court, and the defendant. No further development of the record was necessary. If such a claim were to be ignored on direct appeal and brought only in a § 2255 motion, the defendant would need to show cause for his failure to raise the claim on direct appeal, and prejudice resulting from the alleged error.

New appellate attorneys, therefore, need to carefully consider whether certain ineffective assistance claims need to be brought on direct appeal. They should not, however, find this a difficult burden to bear. They do not need to be soothsayers. There is a clear distinction between those claims that need to be brought on direct appeal, and those that are properly reserved for collateral attack. Attorneys who replace trial attorneys on appeal simply need to determine on direct appeal whether the ineffective assistance claim they envision is based solely on the record or needs extrinsic evidence in order to be sub-

stantiated. If the claim is based solely on the record already developed and needs no further factual finding, there is no excuse for not making the argument on direct appeal.

■ Even if new appellate counsel determines there is need for further extrinsic evidence, counsel would still be well-advised to err on the side of inclusion on direct appeal. Including the claim, complete with the attorney's assertion that further factual development is necessary, gives this Court the opportunity to either remand the claim to the district court or leave the defendant to his post-conviction remedies by declining to rule on the claim. *See, e.g., McGill,* 952 F.2d at 19 & n. 5 (not ruling on ineffective assistance claim and leaving it to collateral attack, and also refusing to remand the claim to the district court); *DeFusco,* 949 F.2d at 120–21 (declining to rule on ineffective assistance claim because of the lack of a complete record). By including the claim on direct appeal with a notation that further factual development is necessary, and thus allowing this Court the opportunity to agree with that notation, new appellate counsel protects the defendant's claim from procedural bar on collateral attack.

■ We expect that there will be few cases in which ineffective assistance claims will be based solely on the record developed at trial, and we also expect that most defendants bringing such claims on § 2255 motions will not find their claims barred. That does not mean, however, that defendants are free to simply exclude ineffective assistance claims on direct appeal, hoping to keep one last arrow in the quiver for collateral attack. Unjustified delay in bringing such claims will still result in a cause and prejudice standard being applied, if those claims could properly have been brought on a direct appeal that was taken by new appellate counsel.

C. *Application of Test to Billy–Eko's Claims*

■ Turning to Billy–Eko's claims, we note that he has raised three grounds for ineffective assistance of counsel: (1) that his trial counsel did not adequately consult with him prior to trial; (2) that counsel failed to object to the introduction of other crimes evidence; and (3) that counsel failed to voir dire the jury on pretrial publicity. All three of these claims were properly brought on § 2255 petition.

Regarding the first claim, Billy–Eko introduced correspondence between himself and the attorney in order to show that counsel was inadequately prepared. This correspondence would have been irrelevant at trial, because it did not go to any issue at trial, and therefore the correspondence was not part of the record. The claim is thus clearly one that was properly reserved for a § 2255 petition, since there was evidence outside the record to support his arguments.

Similarly, Billy–Eko's argument that counsel should have objected to the introduction of other crimes evidence is properly brought in this proceeding. Although there are situations where the failure to object to the introduction of evidence is an obvious error by counsel, *see Matos,* 905 F.2d at 33 (holding that failure to make suppression motion was clear ground for ineffective assistance), that can be evaluated on the record and should be brought on direct appeal, this is not one of them. It is not clear that a cold reading of the record would suggest to appellate counsel that the failure to object to the other crimes evidence consisting of undocumented employment, totally unrelated to the charged crimes, was a ground for ineffective assistance. In contrast, if the other crimes evidence revealed in the record had related to past convictions for the illegal transport of contraband, similar to the charges at trial, trial counsel's failure to object to the introduction of this type of evidence would surely lead anyone reading the record to question counsel's effectiveness.

Finally, Billy–Eko's claim that counsel failed to ask the trial court to voir dire the jury about exposure to pretrial publicity is augmented by evidence of that publicity. This evidence is outside the trial record, and thus the claim could not conceivably have been brought on direct appeal.

Accordingly, we find that all three of Billy–Eko's argued grounds for ineffective assistance were properly brought in a § 2255

proceeding, and we now consider the merits of his Sixth Amendment claims.

## II. *Billy–Eko's Claims on the Merits*

■ The district court denied Billy–Eko's *pro se* § 2255 petition on the merits, finding that trial counsel had done "the best he could with an implausible" theory of defense, and had "made an appealing summation." In Billy–Eko's appeal of that decision, we did not address the merits, finding the ineffective assistance claim procedurally defaulted. *Billy–Eko*, 968 F.2d at 282. We now need to address the substance of his petition, complicated by Billy–Eko's raising, on appeal, ineffective assistance claims that are substantially different from those brought before the district court. Specifically, as noted above, Billy–Eko now alleges that his trial counsel was ineffective for: (1) failing to request voir dire questions on the exposure of jurors to pretrial publicity; and (2) not objecting to introduction of other crimes evidence. The contention brought before the district court and restated on appeal is Billy–Eko's argument that trial counsel failed to adequately consult with the defendant.

The government argues that Billy–Eko has waived the additional Sixth Amendment claims, by failing to raise them on his § 2255 petition to the district court. *See Strouse v. Leonardo*, 928 F.2d 548, 552 (2d Cir.1991) (holding that Court will not consider on appeal grounds for ineffective assistance not brought before the district court). There is, however, a countervailing judicial interest in interpreting *pro se* pleadings liberally and in the interests of fairness to *pro se* litigants. *See Mikinberg v. Baltic S.S. Co.*, 988 F.2d 327, 330 (2d Cir.1993); *Platsky v. Central Intelligence Agency*, 953 F.2d 26, 28 (2d Cir. 1991) (per curiam). Although Billy–Eko did not raise the voir dire and other crimes arguments specifically before the district court, he is now seeking through counsel only to refine further his claims, rather than raising entirely new ones. *See Claudio v. Scully*, 982 F.2d 798, 802 n. 3 (2d Cir.1992), *cert. denied*, ⸺ U.S. ⸺, 113 S.Ct. 2347, 124 L.Ed.2d 256 (1993). A liberal reading of his pleadings and the interests of fairness dictate

that we reach the merits of these additional claims.

Billy–Eko argues, however, that we cannot reach the merits of these claims, precisely because the district court failed to make findings on them, and that a remand for a full evidentiary hearing is necessary. If we deemed Billy–Eko's ineffective assistance claims viable, we would remand them for the purpose of developing a full factual record. *See United States v. Cruz*, 785 F.2d 399, 404 (2d Cir.1986). Because we find, however, that the Sixth Amendment contentions are clearly meritless, we will resolve them. *See id.*

In order to prevail, Billy–Eko must establish that his trial counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms." *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). He must also show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, at 694, 104 S.Ct. at 2068. This is a burden Billy–Eko cannot meet. A reading of the record clearly shows that his trial counsel's performance was not objectively unreasonable, nor did it result in prejudice.

### A. *Pretrial Publicity*

■ Billy–Eko argues that his trial counsel erred in not conducting voir dire in order to determine whether jurors had been influenced by pretrial publicity concerning the Nigerian narcotics trade. The only pretrial publicity he can point to, however, are several articles that ran over wire services (which are not accessible to the public), two articles in dailies that were not published in the New York area, and one article in the *New York Times*. Essentially, then, the only relevant pretrial publicity came from the *Times*, which ran a story on page 9 of the first section, and mentioned Billy–Eko once in passing in the seventh paragraph of the story. *See* James Brooke, *West Africa Becomes Route for Heroin Trade*, N.Y. Times, July 26, 1987, § 1, Part 1, at 9. This level of pretrial publicity was not significant, and could not have materially affected the jurors' verdict.

Cf. *United States v. Tarricone*, 996 F.2d 1414, 1419 (2d Cir.1993) (remanding for district court factual findings on issue of ineffective assistance, where counsel's failure to call a handwriting expert to dispute material evidence linking defendant to crime severely impaired defendant's case).

Thus, even though it would not have been incorrect for Billy–Eko's trial counsel to request voir dire on the publicity, the failure to do so did not prejudice Billy–Eko's trial.

### B. *Other Crimes Evidence*

Billy–Eko contends that his trial counsel was ineffective for failing to object to the government's introduction of testimony about Billy–Eko's undocumented employment in 1968. The government does not defend the admissibility of the prior bad act, but argues that the decision not to object to the testimony was a trial tactic that should not be second-guessed. The government contends that trial counsel could simply have chosen not to draw attention to the testimony by objecting to it.

 Whether we agree or disagree with that explanation for counsel's conduct, the failure to object does not constitute ineffective assistance. The prior bad act did not have anything to do with the crimes with which Billy–Eko was charged, and it is highly unlikely that the jury improperly relied upon the twenty year old event to draw any conclusions about the charged crime. Moreover, the evidence against Billy–Eko was overwhelming, mitigating any error in the admission of the 1968 undocumented employment.

### C. *Counsel Communication with Billy–Eko*

■ Billy–Eko contends that trial counsel failed to consult adequately with him, resulting in a lack of trial preparation that prejudiced his trial. As evidence, Billy–Eko offers correspondence sent to him by his attorney after the trial, and argues that the attorney indicated his lack of preparation and admitted he was at fault in not defending Billy–Eko adequately.

This contention is totally without merit. The correspondence offered by Billy–Eko does not support his argument that counsel admitted his own lack of preparation. A reading of the letters shows that they are nothing more than the expression of a lawyer attempting to console his client after a disappointing verdict. Moreover, a review of the trial record reveals that Billy–Eko's counsel performed more than adequately in his direct examination of Billy–Eko. He demonstrated ample familiarity with the particulars of Billy–Eko's background, which shows that he had sufficient preparation. Most importantly, Billy–Eko does not point to any specific act his attorney should have performed to prepare the defense better, or what would have been achieved by additional face-to-face communication.

### CONCLUSION

For these reasons, we affirm the judgment of the district court.