**Robert E. ROSENFELD, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. CV 96–4370(ADS).**

United States District Court, E.D. New York.

July 31, 1997.

Robert E. Rosenfeld, Minersville, PA, Petitioner *Pro Se.*

Zachary W. Carter, United States Attorney, Eastern District of New York, Garden City, NY by Daniel C. Stark Special Assistant U.S. Attorney, for Respondent.

## MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

The petitioner *pro se* Robert E. Rosenfeld (the "petitioner" or "Rosenfeld") moves the Court for an Order vacating or correcting his sentence pursuant to 28 U.S.C. § 2255 ("Section 2255"), or in the alternative, granting an evidentiary hearing. In addition, the petitioner moves the Court for bail pending determination of his habeas petition. In support of his petition, Rosenfeld states that his guilty plea was not voluntarily nor knowingly made since his right to effective assistance of counsel under the Sixth Amendment was denied at the plea stage and at the sentencing stage.

## I. BACKGROUND

On July 15, 1994, Rosenfeld pled guilty, pursuant to an agreement with the government, to one count of conspiracy to commit bank fraud, 18 U.S.C. § 371, pursuant to the indictment, CR 93–157–2, and to one count of mail fraud, 18 U.S.C. § 1341, pursuant to the information, CR 94–731–1. The charge of conspiracy to commit bank fraud arose from the "factoring" of credit card sales drafts for American Health Systems, a Florida telephone vitamin sales operation, from January 29, 1988 to June 24, 1988, through Jewels By Shalet, a subsidiary of Whitmark Corporation ("Whitmark"). "Factoring" is a process by which a company deposits credit card sales drafts of another company into its bank account, then returns the proceeds minus a commission. *See* Presentence Investigation Report ("PIR") ¶ 2. The charge of mail fraud arose from the "multi-level marketing" of dental plans from December, 1991 to April, 1993 by United Dental Plan of America, another subsidiary of Whitmark. "Multi-level marketing" is a system of tiered retailing in which sellers receive a portion of the commission on sales of other sellers they recruited and trained. *See* PIR ¶ 22.

On April 7, 1995, Rosenfeld was sentenced to twenty-one (21) months of incarceration with the special condition that he receive required medical treatment at a minimum security facility of the United States Bureau of Prisons. The Court also recommended that Rosenfeld be incarcerated at a facility in the northeast region of the United States, closest to his home. Rosenfeld was to surrender on July 7, 1995. A Judgment dated April 19, 1995 recited the above sentence.

Rosenfeld filed a Notice of Appeal on April 12, 1995 appealing the sentence orally imposed on April 7, 1995, contending that the Court misapprehended its authority to grant a downward departure based on his health or, in the alternative, that the Court based its discretionary refusal to grant a downward departure on a "demonstrable error of law" or an impermissible consideration. On June 27, 1995, the Court stayed execution of Rosenfeld's sentence until December 7, 1995, pending resolution of his appeal to the Court of Appeals for the Second Circuit ("Second Circuit"). However, in the event of an affirmance by the Second Circuit prior to December 7, 1995, Rosenfeld's sentence was to commence fourteen (14) days following the date of the order affirming this Court's decision.

On November 8, 1995, the Second Circuit summarily affirmed the Court's judgment. *See United States v. Rosenfeld,* 89 F.3d 825 (2d Cir.1995). When Rosenfeld failed to surrender on December 7, 1995, a new surrender date was scheduled for June 6, 1996. When Rosenfeld again failed to surrender on June 6, 1996, a bench warrant was issued. Rosenfeld surrendered on June 7, 1996.

## II. DISCUSSION

A. *Standard of review*

■ As stated by the Second Circuit, "because requests for habeas corpus relief are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Ciak v. U.S.,* 59 F.3d 296, 301 (2d Cir.1995) (citing *United States v. Frady,* 456 U.S. 152, 165, 102 S.Ct. 1584, 1593, 71 L.Ed.2d 816 (1982)). As a result, prisoners seeking habeas corpus relief pursuant to Section 2255 must show both a violation of their constitutional rights and "substantial prejudice" or a

"fundamental miscarriage of justice." *Id.* at 301.

Further, in Section 2255 proceedings, the Supreme Court has recognized the rule of "procedural default: [that prisoners] cannot assert claims they failed to raise at trial or on direct appeal unless they can show 'cause' for the default and 'prejudice' resulting from it." *Id.* at 302 (citing *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506–2507, 53 L.Ed.2d 594 (1977)); *see also Reed v. Farley,* 512 U.S. 339, 353–355, 114 S.Ct. 2291, 2300, 129 L.Ed.2d 277 (1994) ("the general rule is that the writ of habeas corpus will not be allowed to do service for an appeal.... Where the petitioner—whether a state or federal prisoner—failed properly to raise his claim on direct review, the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice from the alleged ... violation.' ").

■ However, the traditional procedural default rule generally will not apply to ineffective assistance of counsel claims where a petitioner was represented by the same attorney at trial and on direct appeal and where such claims depend on matters outside the scope of the record on direct appeal. *Billy–Eko v. United States,* 8 F.3d 111, 114 (2d Cir.1993). This rule is based on two policy considerations. First, in many instances, the accused is represented by the same counsel during trial and on appeal. As such, it would be unrealistic to expect counsel on appeal to vigorously pursue an ineffective assistance of counsel claim. *Id.* at 114. Second, the resolution of ineffective assistance of counsel claims often requires evidence outside the record on appeal because such claims are often based on alleged errors of omission which are difficult to perceive from the record. *Id.* Examples of such errors include the failure to call a witness, introduce certain evidence or a conflict of interest. *Id.*

■ To establish ineffective assistance of counsel in the context of a guilty plea, a petitioner must demonstrate the following two elements:

(1) that his attorney's performance fell below an objective standard of reasonableness; and

(2) that there is a reasonable probability that, but for his counsel's errors, he would not have pled guilty and would have insisted on going to trial.

*Hill v. Lockhart,* 474 U.S. 52, 57–59, 106 S.Ct. 366, 369–371, 88 L.Ed.2d 203 (1985); *Strickland v. Washington,* 466 U.S. 668, 687–694, 104 S.Ct. 2052, 2064–2068, 80 L.Ed.2d 674 (1984). In applying the above two-prong test, "judicial scrutiny of counsel's performance must be highly deferential" and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland, supra,* 466 U.S. at 689, 104 S.Ct. at 2065. The inquiry focuses "on the fundamental fairness of the proceeding whose results are being challenged." *Id.* at 696, 104 S.Ct. at 2069. "The court's central concern is not with 'grading counsel's performance' but with discerning 'whether despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.'" *United States v. Aguirre,* 912 F.2d 555, 560 (2d Cir.1990) (quoting *Strickland,* 466 U.S. at 696–697, 104 S.Ct. at 2069). The burden is on the petitioner to "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland, supra,* 466 U.S. at 689, 104 S.Ct. at 2065 (citation omitted). Indeed, as the Supreme Court has noted, "there are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Id.*

■ Finally, the Court is mindful that the petitioner is proceeding *pro se* and that his submissions must be liberally construed in favor of the petitioner. *See Douglas v. United States,* 13 F.3d 43, 47 (2d Cir.1993).

### B. *Ineffective assistance of counsel*

Rosenfeld claims that the ineffective assistance of his counsel, on the following two grounds, resulted in a guilty plea that was not voluntarily nor knowingly made: (1) his counsel failed to advise him of the intent element of the crimes of mail fraud and

conspiracy to commit bank fraud; and (2) his counsel misinformed him about "the true sentencing consequences of his plea." In addition, the petitioner claims that his counsel failed to object to the three-level sentencing enhancement for his alleged managerial/supervisory role in the crimes.

■ Rosenfeld was represented by the same attorney, Melvyn K. Roth, Esq. ("Roth"), during his guilty plea, sentencing and appeal. Hence, under the standard enunciated in *Billy–Eko, supra,* the petitioner's failure to raise his claims of ineffective assistance of counsel in the direct appeal, is excused. These claims are now properly before the Court.

### 1. *Legal innocence*

Rosenfeld maintains that his attorney neglected to inform him of the intent element of the charges of mail fraud and conspiracy to commit bank fraud. Rosenfeld contends that his attorney advised him to plead guilty merely because his co-defendants were guilty of the crimes charged. The Court finds petitioner's assertion that his attorney advised him to plead guilty irrespective of the truth, to be unworthy of credence. The petitioner's present protestation of misunderstanding are belied by the record as a whole.

Rosenfeld submits affidavits by: (1) co-defendant Albert Loring (the "Loring Affidavit"); (2) Carmen DiMaria, a part-time employee at Whitmark; (3) Albert Haft, Whitmark's accountant; (4) Stacy Rosenfeld, Rosenfeld's daughter and a part-time employee at Whitmark; and (5) Ruby Rosenfeld, Rosenfeld's wife and a part-time employee at Whitmark, in support of his assertion of innocence. The Loring Affidavit states in part as follows:

> Mr. Mendelson was the sole interface with American Health Systems and neither Mr. Rosenfeld nor myself had any contact with anyone at American Health Systems.
>
> \* \* \* \* \* \*
>
> While Mr. Rosenfeld attended the initial meeting to decide whether to do the American Health Systems project, his further involvement was not required as he was only working on a part-time basis with Whitmark. During that period, his sole responsibility was with National Safety Associates which marketed water filtration products.
>
> Mr. Mendelson attended a meeting with the Bank of New York which Mr. Rosenfeld was not involved in. Mr. Mendelson made certain representations which mislead the bank and eventually caused the investigation. By his own admission, Mr. Mendelson, immediately when questioned, admitted his guilt.... Mr. Rosenfeld had no knowledge of this meeting, its import or what transpired.

Loring Affidavit at 1–2. However, Loring's affidavit contradicts his statements made during his plea allocution.

Co-defendants Rosenfeld and Loring consented to a joint plea allocution. *See* Transcript of Pleading ("P.Tr.") at 5–6. During his plea allocution, Loring confirmed Rosenfeld's involvement as a co-conspirator in the fraudulent factoring scheme:

> MR. WASSERMAN [the Assistant U.S. Attorney]: Your Honor, if I may I want to let the Court know some of the government's proof with respect to this. The government's proof would show that Whitmark Company was a holding company for several different companies, Jewels by Chalet. Jewels by Chalet had one asset which was a merchant account with the Bank of New York and the account was dormant. When Jewels by Chalet was taken over by Whitmark, Whitmark processed charge slips from a telemarketer in Florida which was precluded by the merchants agreement with Jewels by Chalet which you cannot use a merchant account, and the government would show, *the evidence would show that Mr. Loring as the executive was involved as part of this conspiracy charge in agreement with Mr. Mendelsohn, Mr. Rosenfeld, as well as others* in processing these slips and then taking a percentage for Jewels by Chalet and sending a percentage back down to Florida and that was the nature of the scheme and they defrauded the bank by not disclosing to the bank their true purpose. It was a material misrepresentation that resulted in the bank getting charge-

backs from customers of the telemarketing company which resulted in a loss to the bank. That is the nature of the government's proof.

THE COURT: Did you hear what Mr. Wasserman just said, Mr. Loring?

DEFENDANT LORING: Yes.

THE COURT: Is that the truth?

DEFENDANT LORING: That's the truth.

P.Tr. at 39–40 (emphasis added). Clearly, the Loring Affidavit contradicts Loring's sworn statements made during his plea allocution.

The Loring Affidavit must be placed into context. Loring has already pled guilty and is currently serving his sentence. Although Loring and Rosenfeld pled guilty together, side by side, Loring has waited nearly three years to exculpate Rosenfeld. Neither Loring nor Rosenfeld provide the Court with any credible explanation for the inconsistencies between the Loring Affidavit and Loring's statements made during his plea allocution. Consequently, the Court affords the Loring Affidavit little evidentiary weight.

In addition, Rosenfeld's statements made under oath during his plea allocution belie his protestation of innocence and that his plea was unknowing or involuntary. Rosenfeld's statements directly contradict the affidavits submitted by family members and part-time employees of Whitmark. The following exchange occurred during the plea allocution, when the Court asked Rosenfeld to describe the fraudulent factoring scheme and his participation therein:

THE COURT: Will you describe briefly in your own words what you did in connection with Count 1 of the indictment.

DEFENDANT ROBERT ROSENFELD: Well, I was the vice-president of the Whitmark Corporation at the time that occurred and essentially what Mr. Loring and Mr. Wasserman have said here is what happened.

THE COURT: Well, better tell me yourself.

DEFENDANT ROBERT ROSENFELD: Well, a representative of Whitmark went to the Bank of New York and made certain representations that were not truthful. *I had knowledge of that and failed to do anything about it at the time.*

THE COURT: What kind of representations were those.

DEFENDANT ROBERT ROSENFELD: He told the Bank of New York that we were in the business of selling jewelry from catalogue. While it was something we intended to do at a later date, at that time we were processing Visa and Mastercard slips for a company out of Florida.

THE COURT: And you weren't selling jewelry.

DEFENDANT ROBERT ROSENFELD: Not at the time, no.

THE COURT: When you made the statement, you said you were doing it at the time, selling jewelry at the time?

DEFENDANT ROBERT ROSENFELD: No. I'm sorry, not at that time. As a matter of fact, we never did.

THE COURT: But did you make the representation that you were.

DEFENDANT ROBERT ROSENFELD: Yes.

THE COURT: That was false, was it not?

DEFENDANT ROBERT ROSENFELD: Yes.

THE COURT: Was that a material misrepresentation? Did it matter, did it cause the bank to be induced to depart from making certain monies?

DEFENDANT ROBERT ROSENFELD: Yes.

THE COURT: Where was this now?

DEFENDANT ROBERT ROSENFELD: Out of our offices in Farmingdale, New York.

THE COURT: At about what time was it.

DEFENDANT ROBERT ROSENFELD: I believe early 1988.

THE COURT: And did you hear the facts that was set forth by Mr. Wasserman about this count [during Loring's plea]?

DEFENDANT ROBERT ROSENFELD: Yes, I did.

THE COURT: Are they true.

DEFENDANT ROBERT ROSENFELD: Yes.

THE COURT: Do you recall what he said?

DEFENDANT ROBERT ROSENFELD: Yes, I did.

THE COURT: Anything else, Mr. Wasserman?

MR. WASSERMAN: The only thing I would add I think would apply to Mr. Loring also is that each—for example, as a conspiracy, there's an overt act alleged as to each defendant and the first overt act is (a), applies to Mr. Rosenfeld which states that on or about January 29, 1988, the defendant Robert Rosenfeld also known as Bob Rose, acting for Whitmark Corporation, entered into an agreement with Jewels by Chalet's merchant's account. That is one overt count alleged the [sic] in the indictment.

THE COURT: Is that true, Mr. Rosenfeld?

DEFENDANT ROBERT ROSENFELD: Yes.

P.Tr. at 46–49 (emphasis added). As the above excerpt of the plea allocution demonstrates, Rosenfeld concedes to having had knowledge of, and participating in, the factoring scheme.

The Court also inquired into the charge of mail fraud. The following conversation between the Court and Rosenfeld ensued:

THE COURT: Now, will you describe briefly in your own words what you did in connection with the information filed against you.

DEFENDANT ROBERT ROSENFELD: Yes. United Dental Plan adopted a policy of a ten-day refund policy and in reality it became impossible to issue those refunds to anybody who might request them within a ten-day period.

THE COURT: You used the ten-day refund to sell the plan. That was one of the inducements.

DEFENDANT ROBERT ROSENFELD: Yes, it was.

THE COURT: And you *knew* at the time that nobody would possibly get in a refund within ten days with the mailing of the

papers and to get a dentist and so forth; is that correct?

DEFENDANT ROBERT ROSENFELD: That's correct.

THE COURT: You heard what Mr. Wasserman said about that count.

DEFENDANT ROBERT ROSENFELD: Yes, I did.

THE COURT: Is that true in fact what he said? Do you understand what he said and was what he said true?

DEFENDANT ROBERT ROSENFELD: Yes, I understand them and they were true.

THE COURT: And your office was in Melville?

DEFENDANT ROBERT ROSENFELD: Melville, New York.

THE COURT: When did this take place.

DEFENDANT ROBERT ROSENFELD: Early '92 through March of '93.

THE COURT: Was a letter mailed on November 16, 1992?

DEFENDANT ROBERT ROSENFELD: Yes.

THE COURT: In connection with this scheme to execute the scheme.

DEFENDANT ROBERT ROSENFELD: Yes.

P.Tr. at 49–50. In addition, Rosenfeld also confirmed that no one threatened or coerced him to plead guilty, *see* P.Tr. at 46, and that no promises were made about the sentence, *see infra.*

█ The above dialogue between the Court and Rosenfeld evidence a sufficient factual bases for Rosenfeld's guilty pleas for conspiracy to defraud a bank and for mail fraud, and verify that the petitioner entered the guilty plea knowingly and voluntarily. At the plea allocution, Rosenfeld unambiguously acknowledged that he understood the nature of the crimes with which he was charged. The petitioner cannot now belatedly claim to have suffered a confusion that is unsupported by the record. *See United States v. Stevens,* 19 F.3d 93, 95–96 (2d Cir. 1994) (defendant fully understood that he was pleading guilty to a charge of conspiracy to distribute controlled substance as opposed

to the substantive offense, where a factual basis for the charge existed); *Fama v. United States*, 901 F.2d 1175, 1178 (2d Cir.1990) (defendant's claim that he did not understand the offense charged fails when the record shows that the district court explained the elements of the charge and inquired into the factual basis for the plea).

■ "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977). Such statements are conclusive absent a credible reason for departing from them. *United States v. Gonzalez*, 970 F.2d 1095, 1101 (2d Cir.1992). Rosenfeld has not provided any reason for departing from the statements he made at his plea allocution.

Even if Rosenfeld's attorney had failed to explain the intent element of the charges of conspiracy to defraud a bank and mail fraud, the above-cited dialogue with the Court at Rosenfeld's plea allocution remedied the error. Based upon an examination of the record, factual bases existed for Rosenfeld's guilty pleas for conspiracy to commit bank fraud and mail fraud. Therefore, even if his counsel's actions were inadequate, Rosenfeld has failed to demonstrate that he was prejudiced by such conduct. Accordingly, the Court rejects Rosenberg's claim of ineffective assistance of counsel based on the alleged failure by his attorney to explain the elements of the crimes of conspiracy to commit bank fraud and mail fraud.

2. *Alleged promise of a lower sentence*

■ Rosenfeld contends that his attorney guaranteed that "he would receive a downward departure because of his serious and on going health problems." Memorandum in Support of Petition for Relief under 28 U.S.C. § 2255 at 3. However, a mistaken estimate of Rosenberg's sentence is insufficient to support a claim for ineffective assistance of counsel. *See United States v. Sweeney*, 878 F.2d 68, 69–70 (2d Cir.1989). In *Sweeney*, the Second Circuit held that an attorney's erroneous sentencing guideline range prediction made to a defendant did not render a defendant's plea of guilty involuntary or support a claim for ineffective assistance of counsel. *Id.* at 70. The *Sweeney* court noted that at the plea allocution, the district court had informed the defendant of the statutory parameters of his sentence, and confirmed that his sentence was within the sole discretion of the district court. *Id.* at 69–70. Further noting that the district court had found that the defendant "knowingly entered the pleas and acknowledged that no promises had been made regarding his sentence," the Second Circuit rejected the defendant's claim that his counsel was ineffective for erroneously predicting the defendant's sentence range. *Id.* at 70. The Second Circuit emphasized that "[d]efendants may not plead guilty in order to test whether they will get an acceptably lenient sentence." *Id.*

During Rosenfeld's plea allocution, the Court explained, and the petitioner confirmed that he understood, the parameters of his sentence and that his sentence was within the Court's sole discretion, as is evidenced below:

THE COURT: Mr. Rosenfeld, there's a maximum term of imprisonment of five years per count, minimum zero years per count, namely zero to five years per count imprisonment. Do you understand that?

DEFENDANT ROBERT ROSENFELD: Yes, sir.

THE COURT: Do you know what supervised release is? Have you discussed that with Mr. Roth?

DEFENDANT ROBERT ROSENFELD: Yes, we have.

THE COURT: There's a maximum term of supervised release of three years to follow any term of imprisonment. If you violate any condition of supervised release, you may be sentenced to up to two years without credit for pre-release imprisonment or time previously served on postrelease supervision. Do you understand that?

DEFENDANT ROBERT ROSENFELD: Yes, I do, Your Honor.

THE COURT: There is also a maximum fine of up to $250,000 per count depending upon your financial ability to pay.

DEFENDANT ROBERT ROSENFELD: Yes.

THE COURT: And there is restitution in an amount to be determined. Do you understand what that is?

DEFENDANT ROBERT ROSENFELD: Yes, I do.

THE COURT: Also a fifty-dollar special assessment per count for a total of one hundred dollars mandatory special assessment. Do you understand that?

DEFENDANT ROBERT ROSENFELD: Yes, sir.

.    .    .    .    .

THE COURT: Mr. Rosenfeld, have you discussed the Federal Sentencing Guidelines with Mr. Roth?

DEFENDANT ROBERT ROSENFELD: Yes.

THE COURT: Do you understand what the Federal Sentencing Guidelines are?

DEFENDANT ROBERT ROSENFELD: Yes.

\*    \*    \*    \*    \*    \*

THE COURT: I have stated previously and I again say that the best definition I have read is that "the Federal Sentencing Guidelines create a point system that add and subtract mitigating and aggravating circumstances, depending on an individual's conduct and the circumstances surrounding the case." Do you understand that, Mr. Loring?

DEFENDANT LORING: Yes.

THE COURT: Mr. Rosenfeld?

DEFENDANT ROBERT ROSENFELD: Yes.

THE COURT: And that means that I will have to consider certain factors about you, your own life, the good and bad things that happened and about the crime or crimes. And when I do that I will be directed to a guideline that will provide a sentencing range of some months between zero and five years per count. At this point I don't know if that should be determined consecutively or concurrently. I don't know that, so be prepared for consecutively, possibly. Do you understand that?

DEFENDANT LORING: Yes, sir.

THE COURT: I'm giving you the worst possible scenario so that you can hear all of these things before you plead guilty. If after you hear it you still want to plead guilty, you will know how at least what is possible in this case. Do you understand that, Mr. Loring?

DEFENDANT LORING: Yes, sir.

THE COURT: Mr. Rosenfeld?

DEFENDANT ROBERT ROSENFELD: Yes.

THE COURT: Now, there are certain circumstances in which the court can go lower or higher than the guidelines. I don't know if any of those circumstances are present. At this point I don't know whether I'll be able to depart one way or another but we'll have to do what the guideline in months will be presented to me. That's what happens in most of the cases. . . .

\*    \*    \*    \*    \*    \*

THE COURT: Do you understand that, Mr. Rosenfeld?

DEFENDANT ROBERT ROSENFELD: Yes.

THE COURT: Now, have you discussed with your attorney the possible estimated guideline and the estimated incarceration term in this case?

\*    \*    \*    \*    \*    \*

THE COURT: Have you discussed that, Mr. Rosenfeld, with your attorney?

DEFENDANT ROBERT ROSENFELD: Yes, sir.

THE COURT: And with the prosecutor, I assume?

\*    \*    \*    \*    \*    \*

DEFENDANT ROBERT ROSENFELD: Yes.

THE COURT: You cannot rely upon that at all. I don't know what the guideline will be, so if you have in your mind it will be 10 months and it comes out 60 months, you will be disappointed and you will be unhappy. But if you make a motion to withdraw your plea I will not grant the motion because you take your chances. The thing to do is not plead guilty if you are worried about what the term will be. . . .

\*    \*    \*    \*    \*    \*

THE COURT: Do you understand that, Mr. Rosenfeld?

DEFENDANT ROBERT ROSENFELD: Yes, I do.

THE COURT: In other words, if you walk out of here it's too late to say I changed my mind because of the sentence. I'm not saying that there may be other matters that you might change your mind, but not because of the sentence. Do you understand what I'm talking about?

\* \* \* \* \* \*

THE COURT: What do you want to do, Mr. Rosenfeld?

DEFENDANT ROBERT ROSENFELD: I would like to plead guilty.

\* \* \* \* \* \*

THE COURT: Now, at the time of sentence I'm sure that your lawyers will have something to say in your behalf. You may have a statement to make, the prosecutor may or may not make a recommendation. And I will, of course, listen carefully to whatever anybody says, but you must clearly understand the final responsibility for sentencing you is mine alone. While I may be persuaded by the attorneys I may also view the case differently and not impose the sentence they recommend, I may impose a higher one. No one can promise you what the sentence the Court may impose. Is that clear?

\* \* \* \* \* \*

DEFENDANT ROBERT ROSENFELD: Yes, sir.

P.Tr. at 28–33; *see also* P.Tr. at 37–38. Given the above cited dialogue between the Court and Rosenfeld, the Court finds that *Sweeney, supra,* is applicable to the present case. Therefore, the Court rejects the petitioner's claim that his counsel was ineffective for erroneously predicting Rosenfeld's sentence.

In his affidavit, Mr. Roth states that although he advised Rosenfeld that he would move for a downward departure based upon his medical condition, he informed Rosenfeld that he could not guarantee such a result. *See* Affidavit of Melvyn K. Roth ("Roth Affidavit") dated November 13, 1996 at 1–2.

The Court need not reach the issue of whether any promises were made by Roth with regard to Rosenfeld's sentence. Any inaccurate prediction that may have been made by Rosenfeld's counsel was cured by the Court's detailed questioning of the petitioner at the plea allocution, which alerted the petitioner of the "actual sentencing possibilities." *See Ventura v. Meachum,* 957 F.2d 1048, 1058 (2d Cir.1992) (citing *Hunter v. Fogg,* 616 F.2d 55, 58 (2d Cir.1980)) (defense counsel's inaccurate representation of plea agreement cured by district judge's plea allocution and defense counsel's accurate statements at allocution).

In addition, Rosenfeld has not demonstrated that he suffered prejudice as a result of Roth's actions. Had Rosenfeld proceeded to trial, the probability of his acquittal was low. Loring had already acknowledged Rosenfeld's participation in the factoring scheme. *See* P.Tr. at 40. Loring and Alan Mendelson would have been called as government witnesses. Rosenfeld would face a harsher sentence had he been convicted after a trial. By entering into a plea agreement and accepting responsibility for his crimes, Rosenfeld's sentencing guideline was reduced three levels. Thus, the Court finds that the petitioner has failed to show that he was prejudiced by any such alleged promise. Therefore, the Court declines to vacate or modify Rosenfeld's sentence on the basis of any prediction of his sentence that his attorney may have conveyed to him prior to the plea allocution.

### 3. *Sentence enhancement*

Rosenfeld contends that his attorney rendered ineffective assistance by failing to challenge the three level sentence enhancement pursuant to U.S.S.G. § 3B1.1(b), based on his supervisory or managerial role in the offenses. The petitioner submits affidavits by: (1) Albert Loring, C.E.O. and President of Whitmark; (2) Carmen DiMaria, part-time employee at Whitmark; (3) Albert Haft, Whitmark's accountant; (4) Stacy Rosenfeld, Rosenfeld's daughter and a part-time employee at Whitmark; and (5) Ruby Rosenfeld, Rosenfeld's wife and a part-time employee at Whitmark, which state that Rosenfeld did not manage, supervise or participate in any of the day-to-day functions of the

American Health Systems project. The petitioner maintains that had his counsel conducted an investigation of Rosenfeld's responsibilities by interviewing the affiants, he would have discovered that Rosenfeld did not occupy a managerial or supervisory position and hence, that the sentence enhancement was unwarranted. Roth maintains that the adjustment was justified by the facts of the prosecution and therefore, to dispute the sentencing enhancement would not have been a valid argument. Roth Affidavit at 2. The Court finds that the petitioner has not demonstrated that his attorney's representation was unreasonable "under the prevailing professional norms." *See Strickland, supra*, 466 U.S. at 694, 104 S.Ct. at 2068.

U.S.S.G. § 3B1.1(b) states as follows:

If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.

U.S.S.G. § 3B1.1(b) Commentary Application Note 1 defines "participant" as "a person who is criminally responsible for the commission of the offense, but need not have been convicted...." Mendelson pled guilty to conspiracy to commit bank fraud. Loring and Rosenfeld pled guilty to one count of conspiracy to commit bank fraud and one count of mail fraud. Assistant U.S. Attorney Mark Wasserman stated that "the evidence would show that Mr. Loring as the executive was involved as part of this conspiracy charge in agreement with Mr. Mendelson, Mr. Rosenfeld, *as well as others*...." P.Tr. at 40 (emphasis added). Rosenfeld confirmed that this statement was true. *See* P.Tr. at 48. It is of no importance whether these other people were convicted of a crime. Rosenfeld confirmed that people other than Mendelson, Loring and himself were involved in the fraudulent scheme. The Court finds that additional people such as Ruby Rosenfeld and Carmen DiMaria were involved in the fraudulent schemes. *See* PIR ¶¶ 10, 34–35.

In addition, prior to sentencing Rosenfeld, the Court stated the following reasons, among others, for the imposition of Rosenfeld's sentence:

The reasons for the Court's imposition of sentence are as follows. I accept the facts set forth in the presentence report. They paint a picture of a very devious, complicated scheme and plot to defraud.... Mr. Rosenfeld had an opportunity early on to stop this, but he lied. *His wife lied and other people lied to the authorities.* According to the presentence report, and I have nothing to disagree with it, Albert Loring and Robert Rosenfeld are considered equally culpable on the Jewels by Chalet scheme. *Both developed the scheme, shared in the higher monetary gain compared to other subordinates, recruited other participants, and managed and oversaw the daily operation of the enterprise ....* Then the second situation, the United Dental Plan of America.... both Albert Loring and Robert Rosenfeld are considered equally culpable. *Both developed the scheme, shared in the higher monetary gains, recruited other participants. managed and oversaw the daily operations of the [enterprise] ....*

Transcript of Sentencing at 12–13 (emphasis added). The Court notes that Rosenfeld, who was present at the sentencing and heard the above reasons for the imposition of his sentence, did not object to these factual findings.

Because the record supports the presentence report's finding that Rosenfeld held a management or supervisory role and the criminal activity involved five or more participants, Rosenfeld's counsel may legitimately have decided that pursuing other sentencing objections would better serve the petitioner. Indeed, Rosenfeld's counsel did seek a downward departure based on the petitioner's health and even pursued this issue on appeal. Based upon the record, counsel's silence on the issue of the three-level sentencing enhancement for Rosenfeld's supervisory or management role represented an objectively reasonable strategic decision to raise only meritorious arguments at sentencing. As such, it cannot form the basis of an ineffective assistance claim. *See Custodio v. United States,* 945 F.Supp. 575, 580

**148**

(S.D.N.Y.1996) (citation omitted) (strategic decisions are virtually unchallengeable). Therefore, the Court rejects the petitioner's claim of ineffective assistance of counsel based on his attorney's alleged failure to contest the sentencing enhancement.

### 4. *Ineffective assistance of counsel on appeal*

█ Because the petitioner's arguments had no chance of success, his attorney's failure to explain these arguments to him, to raise them at sentencing, or to file an appeal based on them, was not unreasonable. *See Mitchell v. Scully,* 746 F.2d 951, 955 (2d Cir.1984) (because the petitioner's "claim of ineffective assistance of counsel at plea stage has no merit, there can be equally none in his contention with respect to counsel's failure to raise it on appeal"); *Carpenter* v. *United States,* 894 F.Supp. 95, 100 (E.D.N.Y.1995) (held that the defendant was not prejudiced by his counsel's failure to raise meritless arguments on appeal).

### C. *Evidentiary hearing*

█ Given the lack of any valid meritorious allegations and the overwhelming evidence of the factual bases for Rosenfeld's admission of guilt and sentence, as discussed above, the Court denies the petitioner's request for an evidentiary hearing. *See* 28 U.S.C. § 2255; *United States v. Aiello,* 900 F.2d 528, 534 (2d Cir.1990) (given the lack of any truly meritorious allegation, the district court did not commit reversible error by dismissing the habeas claim without an evidentiary hearing).

### III. CONCLUSION

Upon reviewing the submissions of both parties, as well as the related case files, it is hereby

**ORDERED,** that the petitioner's motion for habeas relief pursuant to 28 U.S.C. § 2255, is denied in all respects;

**ORDERED,** that the petitioner's request for a hearing on his habeas petition, is denied; and it is further

**ORDERED,** that the petitioner's motion for bail pending adjudication of the habeas petition, is denied.

The Clerk of the Court is advised that this Order closes the case.

**SO ORDERED.**